Russell BOWER; Jesse Collins; Lorenzo Bower; Frederick Flagel; Claude Becker; Robert Cantrell; Judson Williams; and Donald Hook, for themselves and all persons similarly situated, Plaintiffs-Appellants,

v.

The BUNKER HILL COMPANY, Defendant-Appellee.

No. 83–3634.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 9, 1983.

Decided Feb. 14, 1984.

Daniel P. McIntyre, Pittsbury, Pa., for plaintiffs-appellants.

Eugene I. Annis, Lukins & Annis, P.S., Spokane, Wash., William F. Boyd, Brown, Peacock, Keane & Boyd, Kellogg, Idaho, for defendant-appellee.

Before SNEED, NELSON and REIN-HARDT, Circuit Judges.

NELSON, Circuit Judge:

Former employees of The Bunker Hill Company brought suit alleging that the Company improperly discontinued retirement medical insurance when it ceased operations. The district court granted defendant's motion for summary judgment on the ground that these insurance benefits were not vested. The employees appeal this ruling. We vacate the grant of summary judgment and remand for additional proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

The Bunker Hill Company ("Bunker Hill") began a pension plan for its employees in 1940. In 1956, negotiations with the hourly employees' union resulted in a medical insurance plan for all unionized employees. Although not covered by the union agreement, non-union employees have always received benefits identical to those provided union members.

Since 1956, a number of unions have represented Bunker Hill employees, and a number of labor-management contracts

have been negotiated. Generally, the contracts were renegotiated every three years and benefits for retirees were continually improved. From 1956 through 1972, each contract granted retired employees medical insurance identical to that provided active employees. The contracts incorporated by reference a separate insurance schedule.

In 1972, the United Steelworkers of America began to represent Bunker Hill employees. The labor-management contracts negotiated by the Steelworkers no longer incorporated an insurance agreement by reference. Instead, the insurance plan was an independent agreement, appended to the labor-management contract. The insurance plan no longer expired when the labor-management contract expired, but rather contained an independent expiration clause that was identical to the labor-management contract expiration clause. Retirement benefits were discussed in neither of these two documents, but were set forth in a third paper—a memorandum of agreement drafted at the conclusion of bargaining. This memorandum ran for a term of three years and granted insurance benefits that ran for an unspecified term.

The 1977 and 1980 labor agreements echoed the form of the 1973 agreement. A letter mailed to all employees described insurance coverage in terms of a "lifetime" maximum, and appellants argue that a summary description of the company's insurance plan implied that insurance coverage lasts for the life of retired employees.

On August 25, 1981, Bunker Hill announced that it was discontinuing its operations. Shortly thereafter, each active employee was notified that his medical insurance coverage would end on April 5, 1982. Retired employees were told that their medical coverage would end on May 15, 1982. Bunker Hill continues to pay all retirement benefits except for the medical coverage. It is retirement medical insurance, alone, that is the focus of this lawsuit.

On June 2, 1982, a number of pensioners filed this action in the Eastern District of Washington. Defendant's Motion for Sum-

mary Judgment was granted on January 14, 1983, and it is this ruling the plaintiffs appeal.

## DISCUSSION

### I. STANDARD OF REVIEW.

This court reviews *de novo* decisions granting summary judgment. *Bank of California, N.A. v. Opie,* 663 F.2d 977, 979 (9th Cir.1981). Summary judgment is properly granted only if "the contract provision in question is unambiguous." *Castaneda v. Dura-Vent Corp.,* 648 F.2d 612, 619 (9th Cir.1981). A dispute over a material fact necessary to interpret the contract may result in ambiguity. *See National Union Fire Insurance of Pittsburgh, Pennsylvania v. Argonaut Insurance Co.,* 701 F.2d 95, 97 (9th Cir.1983). Thus, Bunker Hill must demonstrate that the documents underlying this lawsuit unambiguously establish a medical insurance plan limited to a three year term. All "possible inferences from the record" must be drawn in the retirees' favor. *Gee v. Tenneco, Inc.,* 615 F.2d 857, 859 (9th Cir.1980).

The legal framework of this dispute is fairly straightforward: if the pensioners' medical insurance constituted a vested benefit, that benefit could not be ended without the pensioners' consent. *See, e.g., Allied Chemical & Alkali Workers v. Pittsburgh Plate Glass Co.,* 404 U.S. 157, 181 n. 20, 92 S.Ct. 383, 398–399 n. 20, 30 L.Ed.2d 341 (1971). If each collective bargaining agreement unambiguously limited medical benefits to the term of the agreement, no benefits were vested. *See, e.g., Turner v. Local Union No. 302, International Brotherhood of Teamsters,* 604 F.2d 1219, 1225 (9th Cir.1979) (hereinafter cited as *"Turner"*). The sole question, then, is whether the collective bargaining agreements unambiguously limited the term of the medical benefits.

### II. THE EXISTENCE OF MATERIAL ISSUES OF FACT RENDERS SUMMARY JUDGMENT IMPROPER.

The Sixth Circuit, presented with a similar issue and similar evidence, recently held that the collective bargaining agreement created a vested right to lifetime insurance benefits for retirees and affirmed the entry of summary judgment for the union. *International Union, United Automobile, Aerospace & Agricultural Implement Workers v. Yard-Man, Inc.,* 716 F.2d 1476, 114 L.R.R.M. (BNA) 2489 (6th Cir. 1983). Here, however, appellants do not seek an order directing an award of summary judgment in their favor. They claim only that there are material issues of fact that precluded the district court from granting summary judgment to appellees. It is clear from the record that there are a number of facts in dispute in the case before us. Cumulatively, those facts create ambiguities in the contract that render summary judgment improper. *See National Union Fire Insurance of Pittsburgh, Pennsylvania v. Argonaut Insurance Co.,* 701 F.2d 95, 97 (9th Cir.1983).

### A. *The Contract Language Does Not Speak to the Vesting Issue.*

The retirement medical insurance plan does not have an explicit expiration date. The labor-management agreement that endorses the plan does have an expiration date, but the insurance program itself is not necessarily bound by this date. *See, e.g., E.L. Weigand Division v. National Labor Relations Board,* 650 F.2d 463 (3d Cir.1981) (sickness and accident benefits are not limited to term of labor-management agreement), *cert. denied,* 455 U.S. 939, 102 S.Ct. 1429, 71 L.Ed.2d 649 (1982). Thus, the contractual language does not explicitly address the issue before us.

Inferences drawn from parallel contractual provisions provide no additional insights. In some instances, provisions that were to outlast the term of the labor-management agreement were made to do so explicitly. In other instances, however, provisions that were to expire at the end of the term of the labor-management agreement were made to do so explicitly. Accordingly, no inference can be drawn from the absence of an expiration date on the retirement insurance documents. Unable to resolve this lawsuit on the basis of con-

tractual language, we look to extrinsic evidence to determine if summary judgment was properly granted in this case. *Cf. United States v. Erickson Paving Co.,* 465 F.2d 396, 399–400 (9th Cir.1972) (parol evidence only inadmissible where not essential to interpreting contract).

### B. *Extrinsic Evidence Suggests an Ambiguity in the Contract.*

#### 1. *Summary Plan Descriptions*

A small booklet distributed to all employees described Bunker Hill's retirement benefit plan. This "Summary Plan Description" stated only one eligibility requirement for receiving insurance: that the applicant be "receiving a pension from the Bunker Hill Company." Since the pension is lifelong, employees may have viewed the related insurance also to be a lifelong benefit. Moreover, the summary description assures pensioners that, upon their death, their "children and surviving spouse may continue to be covered." Such language suggests that retirement insurance benefits may not have been limited to the duration of the collective bargaining agreement.

The district court discounted these statements because a disclaimer printed on the last page of the summary description specifically noted that the booklet was "an illustration of benefits—not a contract" and instructed employees to "see a copy of the contract at the Personnel Office" for a full explanation of insurance benefits. The district court found that no reasonable person could infer from plan descriptions limited in this manner that the booklet created contractual rights.

Both the summary plan descriptions and the disclaimers are required by the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001–1461 (1976 & Supp. V 1981) ("ERISA"). ERISA regulations also mandate that any "limitations, reductions, or restrictions of plan benefits shall be described or summarized in a manner not less prominent than the style, captions, printing type, and prominence used to describe or summarize plan benefits." 29 C.F.R. § 2520.102–2(b) (1982). The disclaimer in the Bunker Hill summary plan description, although set off from the main body of text, is printed in substantially smaller type than the remainder of the text. The adequacy of such a disclaimer on a summary plan description is a factual dispute, suggesting that summary judgment was not properly granted in this case. *Cf. Corley v. Hecht Co.,* 530 F.Supp. 1155, 1163–64 (D.D.C.1982) (district court assessing adequacy of summary plan description).

#### 2. *Management Representations*

Certain statements made by management may have led employees to believe that they had contracted for a lifelong medical insurance plan. One employee has stated under oath that he was told that insurance benefits would "continue for the rest of [his] life." The local union president was told that surviving spouses would receive insurance as long as they continued to pay their contributions to the plan.

Bunker Hill argues that these statements were never made and, if they were, they do not rise to the level of a material factual dispute. The first part of this argument does not help Bunker Hill's cause. The factual dispute over whether statements were actually made is precisely the sort of issue that is properly resolved by a jury. Thus, this dispute, if material, precludes summary judgment.

The second part of this argument, however, is more compelling. While representations to two of the 2400 workers employed by Bunker Hill may not constitute a material issue, when one of those two workers is the local union president, the representations become more troubling. An influential labor figure may bargain on behalf of others, or widely circulate misinformation. Under these circumstances, a more detailed inquiry into the effect of management representations is required. Although this issue may ultimately prove immaterial, the record is not yet sufficiently developed to make this determination. Thus, the district court must examine additional parol evidence to assess the materiality of man-

agement representations that insurance benefits were vested.

### 3. *Provision of Benefits During A Strike*

During a four-month strike in 1977, Bunker Hill provided insurance benefits to pensioners. Since labor-management agreements are not in effect during strikes, appellants cite this as evidence that retirement insurance benefits were not governed by the labor-management agreement.

The payment of benefits during a strike distinguishes this case from all of the cases relied upon by appellee. *See Turner*, 604 F.2d at 1222–23; *International Union, United Automobile, Aerospace and Agricultural Implement Workers of America v. Roblin Industries, Inc.*, 561 F.Supp. 288, 290–97 (W.D.Mich.1983); *Metal Polishers, Local No. 11 v. Kurz-Kasch, Inc.*, 538 F.Supp. 368, 369 (S.D.Ohio 1982) (strike immediately precedes plant closing; not mentioned in analysis of whether rights vested); *United Rubber, Cork, Linoleum and Plastic Workers of America, AFL–CIO v. Lee National Corporation*, 323 F.Supp. 1181, 1184, 1187–88 (S.D.N.Y.1971) (strike; company terminates welfare plan pursuant to its terms; no legal obligation to continue retirement insurance thereafter).

Conversely, the only case that analyzes in depth the effect of payment of insurance benefits during a strike concludes that payment suggests that the benefits are vested. *United Auto Workers v. Cadillac Malleable Iron Co.*, 3 Empl.Ben.Cas. 1369 (W.D.Mich. 1982). The court discounted company testimony that payment was only an accommodation to workers because such testimony was "subjective and self-serving." *Id.* at—, 3 Empl.Ben.Cas. at 1375. It concluded that the "objective manifestation of a party's intent" should govern this contractual dispute. Thus when insurance benefits are provided during a strike, those benefits are probably not tied to the term of a labor-management agreement.

Although not bound by the precedent of the *Cadillac* court, we are convinced by its logic. If insurance benefits are provided

while no labor-management agreement is in effect, and no other agreement between the employer and employees has been reached, the contract must be deemed ambiguous. Here, we know that benefits were provided during a strike. There is no evidence on the record whether Bunker Hill and its employees had reached an agreement governing the provision of these benefits. It is improper to grant summary judgment before parol evidence on this issue has been heard.

### CONCLUSION

If the labor-management agreement explicitly addressed the issue whether retirement insurance benefits were vested, there might be no ambiguity in this contract. Absent express language, however, the combined effect of an arguably inadequate disclaimer in the Summary Plan Descriptions, misleading representations by management, and the provision of benefits during a strike is sufficient to preclude summary judgment. We therefore VACATE the order of summary judgment and REMAND for additional proceedings.