Diana BERRY and Miles McFall,
husband and wife, Plaintiffs,

v.

BLUE CROSS OF WASHINGTON AND
ALASKA; and Blue Cross and Blue
Shield Association, Defendants.

No. C92–1940Z.

United States District Court,
W.D. Washington,
at Seattle.

Feb. 25, 1993.

John G. Bergmann, Lish Whitson and
Richard E. Spoonemore, Helsell, Fetterman,
Martin Todd & Hokanson, Seattle, WA, for
plaintiffs.

Christopher Kane, Schwabe, Williamson,
Ferguson & Burdell, Seattle, WA, for defendants.

## ORDER

ZILLY, District Judge.

This matter comes before the Court on
plaintiffs' motion for summary judgment,
docket no. 19, and defendant's cross-motion
for summary judgment, docket no. 25. The
Court hereby finds that there are material
issues of fact in dispute and DENIES both
motions for summary judgment.

## BACKGROUND

Plaintiff Diana Berry is a 43–year–old clinical psychologist. Her husband, Miles
McFall, is a clinical psychologist employed by
the United States government at the Veterans' Administration Hospital in Seattle. Ms.
Berry and Mr. McFall are enrolled under a
health plan issued pursuant to the Federal
Employees Health Benefits Act (FEHBA), 5
U.S.C. § 8901 *et seq.* The specific plan that

covers Ms. Berry is managed by the Blue Cross and Blue Shield Association (BCBSA), with Blue Cross of Washington and Alaska furnishing local administration.

Ms. Berry was diagnosed in July 1992 as suffering from epithelial ovarian cancer. A complete abdominal hysterectomy and standard dose chemotherapy failed to contain the growth of the tumors, and Ms. Berry's doctors recommended that she undergo high dose chemotherapy with an autologous bone marrow transplant (HDCT–ABMT). This procedure involves extraction and storage of the patient's own bone marrow, preserving the healthy bone marrow for later reinfusion, treating the patient with high doses of chemotherapy, which may damage or destroy the patient's remaining bone marrow, and reinjecting the patient with her own healthy, preserved bone marrow after the HDCT has been completed. Declaration of Elizabeth J. Shpall, M.D., ¶ 14.

On November 20, 1992, plaintiffs' counsel wrote to defendant BCBSA requesting preauthorization for Ms. Berry's proposed HDCT–ABMT. Plaintiffs' Opening Brief, Ex. 1, Declaration of John G. Bergmann, docket no. 19. Blue Cross responded by a letter dated December 2, 1992, in which it requested additional information concerning Ms. Berry's condition and the proposed course of treatment. Ex. 2, Bergmann Decl. On December 11, 1992, plaintiffs' counsel wrote to Blue Cross and enclosed the requested information. Ex. 3, Bergmann Decl. Plaintiffs' counsel received a facsimile of a letter dated December 12, 1992, from BCBSA, in which defendant denied Ms. Berry's request for HDCT–ABMT. Ex. 4, Bergmann Decl. The letter stated that the 1992 Federal Employee Service Benefit Plan excluded coverage for ABMT treatment for plaintiff's cancer. On December 19, 1992, BCBSA initiated a review of its denial of

coverage with the United States Office of Personnel Management (OPM). OPM upheld the denial of coverage in a decision issued on December 23, 1992. OPM Record, Attachment 1, Defendant's Opening Brief, Ex. 1.

Plaintiffs concede that the 1992 Service Benefit Plan excludes Ms. Berry's condition from HDCT–ABMT treatment.[1] However, they argue that they never saw or received a copy of the 1992 Service Benefit Plan prior to November, 1992, when their counsel advised them to request a copy. Declaration of Miles McFall, ¶ 8. They assert that they had instead received and relied on a copy of a booklet entitled "Plain Talk," produced and distributed by BCBSA, that summarizes and describes the benefits of their health plan. Plaintiffs allege that they have received "Plain Talk" booklets annually since 1985, when Mr. McFall first enrolled in the Blue Cross plan. *Id.*

Unlike the "Service Benefit Plan," the "Plain Talk" booklet does not differentiate between different types of bone marrow transplants. According to the booklet, bone marrow transplants are a covered benefit. Page 20 of the booklet contains the following paragraph:

> **ORGAN TRANSPLANTS** If you need one of the following human organ transplants ( ... bone marrow ... ) Standard Option will help you pay for it. However, if you need a ... bone marrow ... transplant, you or your *physician* must obtain written *prior approval* from the local Blue Cross and Blue Shield Plan before the treatment has begun. *Prior approval* should be obtained from the local Plan located in the area in which you will receive treatment (addresses begin on page 60). There's a $100,000 maximum for hospital and *physician inpatient* charges re-

---

1. There is some disagreement over whether the 1992 or 1993 Service Benefit Plan is the relevant plan in this dispute. The provisions of both plans are substantially similar with regard to HDCT–ABMT treatment. BCBSA did not mention coverage under the 1993 Plan until the appellate stages of plaintiffs' administrative claim. The plaintiffs sought approval for the treatment in November, 1992, at which time Ms. Berry's physicians recommended treatment as soon as

possible, and not later than December, 1992. After coverage was denied, the plaintiffs arranged private financing, and Ms. Berry's HDCT–ABMT treatment began on December 28, 1992, and continued into early 1993. Supplemental Decl. of Miles McFall at 8. Because the delay in scheduling treatment was a direct result of the dispute over coverage, the Court finds that the 1992 Service Benefit Plan is the relevant plan for purposes of resolving this dispute.

lated to surgical transplant procedures that require *prior approval.* Please see page 16 of the *Service Benefit Plan* brochure for more details.

Ex. 6, Bergmann Decl. (emphasis in original). Plain Talk also contains the following section, at pages 48–49, under the heading "exclusions":

We don't cover services and supplies that are:

\*  \*  \*  \*  \*  \*

For or related to surgical transplant procedures, including artificial or human organs or tissues, except for heart, bone marrow, lung, liver, heart-lung, or pancreas transplant procedures, which require *prior approval,* and human cornea and kidney transplants.

Ex. 7, Bergmann Decl. (emphasis in original).

Defendant does not argue that the language of Plain Talk excludes HDCT–ABMT treatment. Instead, BCBSA argues that the Service Benefit Plan, which excludes such coverage, is the only legally relevant statement of the benefits to which Ms. Berry is entitled.

Resolution of this matter turns on whether the Plain Talk booklet or the Service Benefit Plan controls Ms. Berry's health plan coverage.

## STANDARD OF REVIEW

Under FEHBA, the United States, through the United States Office of Personnel Management (OPM), enters into annual federal procurement contracts with various private health care carriers in order to offer health benefit plans with a variety of coverage levels and costs to federal employees. 5 U.S.C. § 8903. Under FEHBA, a carrier must pay a benefits claim if OPM finds that the contract entitles an individual to such payment. 5 U.S.C. § 8902(j). OPM has established by regulation an administrative review process for an individual who believes that a carrier has improperly denied a claim. 5 C.F.R. § 890.105 (1992). In this case, OPM considered an appeal of Ms. Berry's

case and affirmed the denial of benefits. This denial represents a final determination by an administrative agency.

Several courts have held that OPM interpretations of FEHBA plans are subject to review under the arbitrary and capricious standard. *Carolyn Arrington v. Group Hospitalization and Medical Services, Inc.,* 806 F.Supp. 287 (D.D.C.1992); *Dixie L. Roseberry v. Blue Cross and Blue Shield of Nebraska,* No. 8:CV 92–371 (D.Neb. Dec. 18, 1992). OPM, as the agency charged with ensuring health care coverage for federal employees, has the duty and expertise to interpret the language of its contracts. The opinions of OPM regarding interpretation of its contracts with carriers are entitled to deference. In this case, the Court defers to OPM on the matter it resolved: that the 1992 Service Benefit Plan does not provide coverage for Ms. Berry's HDCT–ABMT treatment.

However, the final decision of the OPM to deny benefits to Ms. Berry rests exclusively on the language of the 1992 Service Benefit Plan. The case before this Court raises a different question. Plaintiffs concede that the Service Benefit Plan excludes the needed treatment, but argue that the Plain Talk booklet promises the treatment, that they relied on that representation, and that they are entitled to coverage on that basis. OPM did not consider or decide the issue of whether the Plain Talk booklet affects coverage. OPM Record, Ex. 1, Defendant's Opening Brief, docket no. 28.

▌ Failure of the OPM to consider the issue presented to this Court is due primarily to the manner in which the appeal was pursued. The appeal was not requested by Ms. Berry, but was instead triggered by *defendant's* request that OPM review their decision to deny coverage.[2] Ms. Berry and Mr. McFall did not participate in the appeal. This raises the question of whether plaintiffs have truly exhausted their administrative remedies and whether this Court ought to remand the issue facing this Court to the OPM.

---

2. The original request for coverage concerned the coverage under the 1992 Plan and whether or not the proposed treatment constituted experimental treatment. Plaintiffs first raised the issues relating to "Plain Talk" only after OPM's final decision on the coverage issue.

When an exhaustion requirement is created by agency regulations, as in this case, the decision whether to require exhaustion is a matter for district court discretion. *Kobleur v. Group Hospitalization & Medical Services, Inc.*, 954 F.2d 705, 711 (11th Cir.1992) (citing *Hironymous v. Bowen*, 800 F.2d 888, 892 (9th Cir.1986)). The Court finds that remand would be inappropriate in this case. The affidavit of the OPM insurance administrator submitted by defendant in support of their motion for summary judgment suggests that requiring plaintiffs to argue this issue before the OPM would be to demand that they engage in a futile exercise. Declaration of Reginald Jones, Assistant Director for Insurance Programs, OPM, Defendant's Opening Brief, Ex. 2.

In addition, in *Arrington* and *Roseberry*, where courts considered whether the abuse of discretion standard was appropriate, OPM was engaged in interpreting the language of the FEHBA Service Benefit Plan itself to determine whether coverage existed. By contrast, resolution of the conflict over whether a document such as Plain Talk can create coverage when none is otherwise available under the policy is a legal question, which this Court would review de novo, even if first presented to the OPM for resolution. Federal law will be applied to enforce as written the contracts between the OPM and carriers. 5 U.S.C. § 8902(m)(1). Unlike federal courts, which regularly must resolve the kind of dispute now before this Court, OPM has no special expertise in the general matters of federal law which are implicated in this case.

## DISCUSSION

### I. Controlling Law

■ FEHBA contains a preemption provision that provides:

The provisions of any contract under this chapter which relate to the nature or extent of coverage or benefits (including payment with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans to the extent that such law or regulation is inconsistent with such contractual provisions.

5 U.S.C. § 8902(m)(1). The Ninth Circuit has interpreted this preemption provision broadly to preempt state law claims. *Hayes v. Prudential Ins. Co.*, 819 F.2d 921, 926 (9th Cir.1987), *cert. denied*, 484 U.S. 1060, 108 S.Ct. 1014, 98 L.Ed.2d 980 (1988). Because of the preemption provision, this dispute must be resolved by reference to federal law. But plaintiffs do not bring any state law claims before this Court. They merely cite state law that supports their position that a summary of insurance benefits controls when it conflicts with a master policy. Federal courts may use state law decisions to aid in fashioning federal law. *Kunin v. Benefit Trust Life Ins. Co.*, 910 F.2d 534, 539 (9th Cir.1990), *cert. denied*, 498 U.S. 1013, 111 S.Ct. 581, 112 L.Ed.2d 587 (1990).

The issue facing this Court is one of first impression. Nevertheless, there is a significant body of federal common law and state law that provides a context to this contract dispute. Insurers are generally held to promises of coverage set forth in summaries. The Ninth Circuit has recognized the well-established principle of federal common law that conflicts or ambiguities in insurance policies are resolved in favor of an insured. *Kunin v. Benefit Trust Life Ins. Co.*, 910 F.2d 534, *cert. denied*, 498 U.S. 1013, 111 S.Ct. 581, 112 L.Ed.2d 587 (1990); *Wilkinson v. Home Ins. Co.*, 568 F.2d 649, 650 (9th Cir.1978). The reasoning behind such a rule is sound:

Any burden of uncertainty created by careless or inaccurate drafting of the summary must be placed on those who do the drafting, and who are most able to bear that burden, and not on the individual employee, who is powerless to affect the drafting of the summary of the policy and ill equipped to bear the financial hardship that might result from a misleading or confusing document.

*Hansen v. Continental Ins. Co.*, 940 F.2d 971, 982 (5th Cir.1991).

In addition to the federal common law background available to this Court in resolving this dispute, federal courts of several circuits have been called upon to decide an

issue analogous to the issue presented here: whether plan summaries provided under the Employee Retirement Income Security Act (ERISA) control when the language of a plan summary conflicts with the language of the underlying plan.

ERISA provides that a "summary plan description of any employee benefit plan shall be furnished to participants and beneficiaries" and shall contain information including "the circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." 29 U.S.C. § 1022(a)(1), (b). FEHBA provides a similar requirement, that "[e]ach enrollee in a health benefits plan shall be issued an appropriate document setting forth or summarizing the . . . services or benefits, including maximums, limitations, and exclusions" of the policy. 5 U.S.C. § 8907(b).

Analogy in this dispute to ERISA cases regarding plan summaries is appropriate. While FEHBA does not *require* that a summary of a plan be issued, it, like ERISA, specifically requires that beneficiaries be notified of information that might result in a denial of benefits. The Ninth Circuit has analogized FEHBA provisions to ERISA provisions in order to resolve questions concerning the breadth of the FEHBA preemption. *Hayes v. Prudential Ins. Co.*, 819 F.2d 921, 926 (9th Cir.1987, *cert. denied*, 484 U.S. 1060, 108 S.Ct. 1014, 98 L.Ed.2d 980 (1988).

## II. Does a plan summary control when it conflicts with an underlying plan?

■ Several federal courts interpreting the ERISA summary provision have held that a plan summary controls when its provisions conflict with a master plan. The reasoning in *McKnight v. Southern Life and Health Ins. Co.*, 758 F.2d 1566 (11th Cir. 1985), is typical of such decisions:

[the insurer] asserts that if a conflict arose between the plan and the summary, the plan should prevail. Such an assertion defeats the purpose of the summary. It is of no effect to publish and distribute a plan summary booklet designed to simplify and explain a voluminous and complex document, and then proclaim that any inconsistencies will be governed by the plan. Un-

fairness will flow to the employee for reasonably relying on the summary booklet. *Id.* at 1570. The Fifth Circuit has stated that the:

purpose of [the summary] provision is obvious: "It is grossly unfair to . . . disqualify [an employee] from benefits if . . . [the] conditions [which lead to the disqualification] were stated in a misleading or incomprehensible manner in the plan booklets."

*Hansen v. Continental Ins. Co.*, 940 F.2d 971, 980 (5th Cir.1991) (citing H.R.Rep. No. 93–533, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 4639, 4646). In *Hansen*, the court cited *McKnight*, as well as the Sixth Circuit decision *Edwards v. State Farm Mut. Auto Ins. Co.*, 851 F.2d 134, 136 (6th Cir.1988), for the proposition that "statements in a summary plan are binding and if such statements conflict with those in the plan itself, the summary shall govern." *Hansen*, 940 F.2d at 982.

The Ninth Circuit has not addressed the issue of ERISA plan summaries directly, but two decisions make reference to the issue. In *Carver v. Westinghouse Hanford Co.*, 951 F.2d 1083 (9th Cir.1991), *cert. denied*, — U.S. ——, 112 S.Ct. 3036, 120 L.Ed.2d 905 (1992), the court found that the summary and plan did not conflict and so did not reach the issue presented in this case. However, the court stated that "[i]f the summary booklet had varied from the formal plan, [defendant] may not have been able to enforce [the formal plan]." *Id.* at 1087.

In another Ninth Circuit case, the court did not reach the issue of the plan summary because it found that the plaintiff had not stated a claim for benefits based upon the plan summary, but rather had based his claims on the plan itself and ERISA. However, the Court made reference to the Sixth Circuit *Edwards* decision that "summary plan statements are binding" and to two district court decisions that "challenges to a plan can be based on summary plan description and such a summary may modify the terms of the plan." *Arnold v. Arrow Transp. Co.*, 926 F.2d 782, 784–785 n. 3 (9th Cir.1991).

The Court adopts the reasoning of the Fifth, Sixth, and Eleventh Circuits and holds that the language of a plan summary controls if it conflicts with a FEHBA plan. However, as set forth below, in order to establish a claim under a FEHBA plan summary, the Court holds that a plaintiff must establish reliance on the summary.

### III. Is "Plain Talk" a "plan summary"?

■ FEHBA differs from ERISA in that it does not require that a *summary* of a plan be sent, but rather requires that "[e]ach enrollee ... shall be issued an *appropriate document* setting forth *or* summarizing the ... services or benefits, including maximums, limitations, and exclusion ... thereunder." 5 U.S.C. § 8907(b) (emphasis added).

BCBSA, joined by OPM, claims that the Services Benefit Plan itself is the Section 8907(b) document, and that existence of Plain Talk is simply irrelevant to the FEHBA statutory framework. Jones Decl., Defendant's Opening Brief, Ex. 2, at ¶ 6. Plaintiffs argue that the timing, mailing, and content of Plain Talk must necessarily result in a finding that Plain Talk is the Section 8907(b) document that must state all exclusions and limitations. The Court finds that there are material issues of fact in dispute as to whether or not Plain Talk constituted the appropriate disclosure required by Section 8907(b). The Court also finds that there are material issues of fact relating to whether or not the plaintiffs were entitled to rely upon Plain Talk whether or not the fact finder concludes that the Services Benefit Plan was the Section 8907(b) disclosure document.

### IV. Detrimental Reliance

This Court finds persuasive the reasoning of *Branch v. G. Bernd Co.*, 955 F.2d 1574, 1579 (11th Cir.1992), in demanding that an employee must have relied on a plan summary in order to prevail in a claim based on the language of the summary. The *Branch* court rejected what it called a "form of strict liability" that would be the result of enforcing plan summaries against employers absent a showing of detrimental reliance:

Of course, when an employer provides an inaccurate plan summary, the beneficiaries who rely on that summary are not accurately apprised of their rights. But when a beneficiary fails to read or rely on the summary, whether it is accurate or not, the beneficiary also prevents full appraisal of the rights under the plan. Beneficiaries must do their part if Congress' objective is to be met.... [T]o prevent an employer from enforcing the terms of a plan that are inconsistent with those of the plan summary, a beneficiary must prove reliance on the summary.

*Branch*, 955 F.2d at 1579.

The First and Third Circuits have also expressly held that a beneficiary must show reliance on a plan summary to enforce its terms. *Bachelder v. Communications Satellite Corp.*, 837 F.2d 519, 522–23 (1st Cir. 1988); *Gridley v. Cleveland Pneumatic Co.*, 924 F.2d 1310, 1319 n. 8 (3rd Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 2856, 115 L.Ed.2d 1023 (1991).

While the Sixth Circuit has stated that no detrimental reliance must be proven by an employee seeking to enforce the language of a plan summary, *Edwards v. State Farm*, 851 F.2d 134 (6th Cir.1988), *reh'g denied* (Sep. 8, 1988), this Court does not find the reasoning in *Edwards* as convincing as that of *Branch*. In *Edwards*, the court reasoned that "Congress has promulgated clear directives prohibiting misleading summary plan descriptions. The court elects not to undermine the legislative command by imposing technical requirements on the employees." *Id.* at 137. But it works no unfairness on an employee to require that he or she show some minimal exposure to and reliance on the document that forms the basis of a claim for benefits.

The parties dispute whether the Service Benefit Plan or Plain Talk or both were sent to plaintiffs. Plaintiffs contend they only received and relied upon Plain Talk. The defendant argues that even if Plain Talk was the only document received and relied upon, the plaintiffs did not in fact rely upon Plain Talk in making their decision to retain their coverage with BCBSA under the Plan. The plaintiffs normally received the Plain Talk booklet several months *after* the period set

aside for deciding whether or not the coverage would be continued. The defendant also points to the various disclaimers contained in Plain Talk as further evidence that plaintiffs could not reasonably rely upon Plain Talk.

The parties also dispute the degree of reliance which must be established. The plaintiffs argue that either no reliance or a minimum degree of reliance in general will satisfy this requirement. In contrast, the defendant argues that the plaintiffs must rely specifically on a representation that the specific type of coverage was relied upon. The Court adopts the fairness concerns expressed in *Branch,* and *McKnight,* 758 F.2d at 1570, and holds that plaintiffs will be required to prove reasonable reliance on the Plain Talk booklet in making their decision to purchase their health coverage. The reasonableness of any reliance shown by plaintiffs is an issue for the factfinder.

### V. Disclaimers

FEHBA requires that advertising materials distributed by FEHBA carriers contain a disclaimer referring enrollees to the official FEHBA brochure regarding the plan. 48 C.F.R. § 1603.702(c). Defendants argue that they included such disclaimers and that the existence of such disclaimers in Plain Talk are sufficient to relieve them of any liability for the contents of Plain Talk. The adequacy of disclaimers in a plan description or summary is normally a factual issue which precludes summary judgment. *Bower v. Bunker Hill Co.,* 725 F.2d 1221, 1224 (9th Cir. 1984). The Court holds that the language of the disclaimers, combined with their placement within Plain Talk, go to the issue of whether plaintiffs' alleged reliance on Plain Talk was reasonable.

### CONCLUSION

For the foregoing reasons, the Court denies both motions for summary judgment. The Court further concludes that pursuant to Rule 56(d), certain facts and conclusions are without material factual controversy and can now be determined as follows:

1) The 1992 Service Benefit Plan excludes coverage for Ms. Berry's HDCT–ABMT treatment;

2) The Plain Talk brochure describes coverage for Ms. Berry's treatment;

3) Plain Talk will control if plaintiffs demonstrate that they reasonably relied on Plain Talk to describe the coverage available to the plaintiffs;

4) There remain material issues of fact in dispute which preclude summary judgment for either party, *Bunker Hill,* 725 F.2d 1221 (9th Cir.1984), specifically:

a) which documents were mailed, received, and reviewed by plaintiffs; and

b) whether Plain Talk was the appropriate document under § 8907(b); or

c) whether plaintiffs relied on Plain Talk and whether reliance was reasonable under all the circumstances.

IT IS SO ORDERED.