**Phyllis C. KRISHAN, et al., Plaintiffs,**

v.

**McDONNELL DOUGLAS CORPORATION, a Maryland corporation, Defendant.**

**No. CV 92–7067 AWT.**

United States District Court, C.D. California.

Dec. 27, 1994.

---

William S. Lerach, Wendy S. Gerboth, Milberg Weiss Bershad Hynes & Lerach, San Diego, CA, Kevin P. Roddy, Jeff S. Westerman, Los Angeles, CA, Henry H. Rossbacher, George M. Snyder, James S. Cahill, Karen D. Kerner, Rossbacher & Associates, Los Angeles, CA, Jonathan W. Cuneo, The Cuneo Law Group, Washington, DC, for plaintiffs.

Thomas J. McDermott, John W. Amberg, Bryan Cave, Los Angeles, CA, Thomas E. Wack, Bryan Cave, St. Louis, MO, for defendant.

## MEMORANDUM DECISION AND ORDER

TASHIMA, District Judge.

This action arises from the decision by an employer, defendant McDonnell Douglas Corporation ("MDC"), to terminate health care benefits for its retired, non-union employees. Like many employers, MDC provided health care benefits to retirees, as well as employees, for several decades under an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). However, in 1992, MDC decided to terminate its health care benefits plan for its retired, non-union employees ("plaintiffs").

Plaintiffs subsequently brought this class action seeking declaratory and injunctive relief and damages.[1] MDC has moved for summary judgment on the remaining counts. Plaintiffs have filed a cross-motion for partial summary judgment, seeking a declaration that MDC's termination of retiree health benefits was invalid, and that company-funded benefits be restored.

Cognizant of the uncertainty and hardship that the plaintiff class will likely face, the court is, nevertheless, compelled to grant MDC's motion for summary judgment on all remaining counts.

## THE UNCONTROVERTED FACTS

For several decades prior to January 1, 1989, MDC provided health care benefits to non-union, salaried employees and retirees through group insurance contracts with Connecticut General Life Insurance Co. and various health maintenance organizations ("HMOs"). Effective January 1, 1989, MDC terminated its health insurance contract with Connecticut General and implemented a self-insurance arrangement which has been in effect since that time. Throughout the years, MDC described its group health care plan through insurance certificates and Summary Plan Descriptions ("SPDs") distributed to salaried employees and retirees. The various certificates of insurance and SPDs have been updated as changes have been made to the health benefits plan.

Following the effective date of ERISA, January 1, 1975, MDC issued SPDs to employees and retirees in 1978, 1981, 1984, and 1988.[2] The SPDs issued in 1978, 1981 and 1984 each contained the following reservation of rights ("ROR") statement:

MDC fully intends to continue the Group Insurance Program indefinitely but reserves the right to end or amend it.

Both of the 1988 SPDs contained the following ROR statement:

MDC fully intends to continue your benefits program indefinitely but reserves the right to amend or end any of the plans at any time.

In addition, both 1988 SPDs provide that continuation of coverage under the Consolidated Omnibus Budget Reconciliation Act of 1986 ("COBRA") "will stop if ... the health care plans are terminated."

The amendment/termination provisions quoted above have always appeared in the

---

1. Earlier in these proceedings, the court dismissed all claims in the First Amended Complaint except Counts One (Failure to Maintain Plan as Required by ERISA), Two (Breach of Plan Terms), Eleven (Declaratory and Equitable Relief Under ERISA), and Twelve (Injunctive Relief).

2. In 1988, MDC actually issued two similar SPDs—one for active and one for retired employees. Plaintiffs dispute that the 1988 booklets are actually SPDs. See discussion, infra, n. 5.

text of the SPDs—not in a footnote—and have been printed in the same size and typeface as the remainder of the text. Those provisions have been equally prominent in style, caption and printing type with provisions describing plan benefits.

The 1978 SPD contained one reference to "lifetime" health care benefits. None of the subsequent SPDs used the term "lifetime" to describe health care benefits.

Throughout the years, MDC also communicated with employees and retirees regarding their health care benefits in a variety of ways. MDC provided employees with announcements, brochures, administrative bulletins, employee newsletters, open enrollment materials, and individual letters. Upon retirement, MDC counseled employees and provided a variety of written materials about their retirement benefits to them.

MDC has periodically modified and sometimes reduced health care benefits for those already retired. At one time, retirees paid nothing under the MDC Plan. But co-payments and deductibles were imposed upon retirees in 1987, and the amount of those retiree expenses increased in later years. Prior to this lawsuit, no plaintiff or class member ever instituted any lawsuit or other legal challenge to MDC's right to change retiree health care.

Effective January 1, 1993, MDC terminated company-paid health care for retirees and their survivors and replaced it with a new arrangement funded entirely by participant contributions. At the same time, MDC amended its retirement income plans to provide a supplemental pension benefit to the retirees for the payment of their health care costs for a period estimated to extend through 1996. MDC has not stated how it will deal with retiree health care after the current funding expires.

## DISCUSSION

The parties agree that the retiree health benefits at issue here constitute "an employee welfare benefits plan" under ERISA, not an "employee pension benefit plan." *See,* 29 U.S.C. §§ 1002(1) and 1002(2)(a).

■ Unlike employee pension benefits plans, employee welfare plans, like the one in this case, are exempt from ERISA's vesting requirements. *Massachusetts v. Morash,* 490 U.S. 107, 119, 109 S.Ct. 1668, 1675, 104 L.Ed.2d 98 (1989); *DeVoll v. Burdick Painting, Inc.,* 35 F.3d 408 (9th Cir.1994); *West v. Greyhound Corp.,* 813 F.2d 951, 954 (9th Cir.1987). "Retiree medical benefits do not become vested once an employee becomes eligible or retires." *Williams v. Caterpillar, Inc.,* 944 F.2d 658 (9th Cir.1991).

■ Thus, unless established by contractual undertakings in the ERISA plan documents, employees have no guaranteed right to continued medical benefits. *Alday v. Container Corp.,* 906 F.2d 660, 665 (11th Cir.1990), *cert. denied,* 498 U.S. 1026, 111 S.Ct. 675, 112 L.Ed.2d 668 (1991). Absent such a contractual undertaking, an employer may terminate a welfare plan at will. *Biggers v. Wittek Indus., Inc.,* 4 F.3d 291, 295 (4th Cir.1993).

■ Because ERISA recognizes the employer's inherent right to modify or terminate its welfare plans, plaintiffs bear the burden of proving that MDC waived this right by committing to vested benefits. *See, Tusting v. Bay View Fed. Sav. & Loan Ass'n,* 789 F.Supp. 1034, 1041 (N.D.Cal.1992), *citing Howe v. Varity Corp.,* 896 F.2d 1107, 1109 (8th Cir.1990).

## I. BREACH OF PLAN TERMS

Count Two of the First Amended Complaint alleges that MDC breached the terms of its ERISA health benefits plan. Plaintiffs contend that MDC's plan contained an irrevocable promise of guaranteed lifetime medical benefits to retired employees. MDC denies that it ever made such a promise.

### A. The Plan Documents

Before the court can decide the issue of breach, it must determine what documents constitute the ERISA plan. Plaintiffs have submitted thousands of pages of declarations and exhibits purporting to identify the plan documents, among them announcements, brochures, administrative bulletins, employee news letters, open enrollment materials, indi-

vidual letters, communications from health care providers, and retirement counselling materials. Some of these communications apparently contain promises of lifetime benefits. MDC argues that these are not plan documents under ERISA.

■■■ In deciding what documents govern an ERISA plan, the court must look to the provisions of ERISA itself. ERISA mandates that, "Every employee benefit plan shall be established and maintained pursuant to a *written instrument.*" 29 U.S.C. § 1102(a)(1) (emphasis added). The only written document specifically *required* under ERISA is the SPD.[3] Section 1022(b) sets forth the required contents of an SPD, and these are elaborated upon in the regulations. 29 C.F.R. § 2520.102–3. In addition, 29 C.F.R. § 2520.102–2 describes the required style and content of the SPD. In *Moore v. Metropolitan Life Ins. Co.*, 856 F.2d 488 (2d Cir.1988), the Second Circuit relied on ERISA's provisions in refusing to recognize as plan documents the sort of communications urged on the court by plaintiffs. In *Moore*, the court noted:

> Plaintiff's argument, if accepted, would undermine ERISA's framework which ensures that plans be governed by written documents filed under ERISA's reporting requirements and that SPDs, drafted in understandable language, be the primary means of informing participants and beneficiaries.

3. 29 U.S.C. § 1022(a)(1) provides:

> A summary plan description of any employee benefit plan shall be furnished to participants and beneficiaries as provided in section 1024(b) of this title. The summary plan description shall include the information described in subsection (b) of this section, shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan. A summary of any material modification in the terms of the plan and any change in the information required under subsection (b) of this section shall be written in a manner calculated to be understood by the average plan participant and shall be furnished in accordance with section 1024(b)(1) of this title.

*Id.* at 492. Following *Moore*, the court holds that the informal communications proffered by plaintiffs are not ERISA plan documents.

This ruling is consistent with the court's earlier class certification ruling. The documents proffered by plaintiffs amount, in essence, to individualized proof of promises made to various class members. If the court were find that all of these materials were plan documents, it would no longer be dealing with one ERISA plan, but with as many separate plans as there are class members. Such a result contradicts both the rationale behind ERISA, and the purpose of granting class certification.[4]

## B. *SPDs Supersede Other Plan Documents*

However, even if the court were to accept plaintiffs' argument that its thousands of pages of evidence were plan documents, plaintiffs could not ultimately avoid summary judgment. Although the Ninth Circuit has not addressed the issue, several other circuits have held that, as a matter of law, SPD provisions take precedence over other, conflicting plan communications, whether written or oral.

> Like the Sixth and Eleventh Circuits, this Court holds that the summary plan description is binding, and that if there is a conflict between the summary plan description and the terms of the policy, the summary plan description shall govern. Any other rule would be, as the Congress

While ERISA contemplates both a "plan description" and a "summary plan description," 29 U.S.C. § 1022(a), ERISA's regulations have merged the summary plan description and the plan description into one document: "The plan description required by section 102 of the Act shall consist of a summary plan description as described in section 102(b) of the Act." 29 C.F.R. § 2520.102–1. A number of cases have held that the "plan description" and the SPD can be one and the same. *See, e.g. Alday,* 906 F.2d at 666; *Murphy v. Keystone Steel & Wire Co.,* 850 F.Supp. 1367, 1373 n. 8 (C.D.Ill.1994).

4. Were the law as to what constitutes ERISA plan documents as contended by plaintiffs, the court would have to revisit the issue of whether this case is suitable for class treatment. Individual questions would seem to overwhelm any common questions. However, that issue is not now before the court.

recognized, grossly unfair to employees and would undermine ERISA's requirement of an accurate and comprehensive summary. *Hansen v. Continental Ins. Co.*, 940 F.2d 971, 982 (5th Cir.1991). *See also Edwards v. State Farm Mut. Auto. Ins. Co.*, 851 F.2d 134, 136 (6th Cir.1988); *McKnight v. Southern Life & Health Ins. Co.*, 758 F.2d 1566, 1570 (11th Cir.1985).

▅▅▅ MDC issued SPDs to its retired employees in 1978, 1981, 1984, and 1988.[5] The terms of these SPDs are binding on MDC under ERISA, and they override any conflicting terms contained in other alleged plan communications, such as those proffered by plaintiffs.

## C. *Promise of Lifetime Benefits*

Plaintiffs argue that MDC's SPDs themselves contain an implied promise of lifetime benefits. They admit that, except for one reference to lifetime benefits in the 1978 SPD, the SPDs do not explicitly promise lifetime health care benefits to retirees. However, they argue that such a promise is implied, because MDC maintained a "unitary plan" whereby MDC contractually promised to provide the same benefits to both active and retired employees. By terminating the benefits of retirees only, plaintiffs argue, MDC breached its implied promise to treat both groups identically.

▅▅▅ The only evidence of such a unitary plan plaintiffs can point to within the plan documents themselves, is that in 1988 MDC issued two SPDs—one for active and one for retired employees. Both SPDs bear the same plan number and describe virtually identical medical coverage. Far from supporting plaintiff's theory of a unitary plan, however, the issuance of *separate* SPDs for active and retired employees argues against the existence of a single, unitary plan.

Thus, to support their unitary plan theory, plaintiffs once again ask the court to consider the voluminous extrinsic communications MDC made to retirees through the years. However, as discussed above, those communications are not plan documents and cannot furnish the basis for a promise under the plan.

The only Ninth Circuit case on which plaintiffs rely for their argument that the court should look for a promise by considering extrinsic evidence is *Bower v. Bunker Hill Co.*, 725 F.2d 1221 (9th Cir.1984). However, *Bower* involved the interpretation of a collective bargaining agreement, not an employee welfare plan. In *Bower*, SPDs were used *themselves* as extrinsic evidence to interpret the labor agreement. *Bower* does not stand for the proposition that courts should consider documents other than SPDs in interpreting an ERISA employee welfare plan.

## D. *Reservation of Rights*

▅▅▅ Even if MDC's SPDs contained an implied promise of lifetime benefits, MDC unambiguously reserved the right to terminate such benefits. Language promising "lifetime" benefits does not negate the employer's reserved right to end or amend coverage. *See, e.g., Howe*, 896 F.2d at 1109 (holding that vested rights cannot be derived from an "employer's promise to provide welfare benefits 'until death of retiree' where the employer had expressly reserved the right to terminate or amend the plan"); *Musto v. American General Corp.*, 861 F.2d 897 (6th Cir.1988), *cert. denied*, 490 U.S. 1020, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989); *Sprague v. General Motors Corp.*, 768 F.Supp. 605, 610 (E.D.Mich.1991).

▅▅▅ However, plaintiffs contend that MDC's ROR language was ambiguous and

---

5. Plaintiffs object that some of the documents claimed by MDC to be SPDs are not SPDs because they are not identified as such. In particular, the 1988 booklets, unlike the earlier ones, are styled "Guide" rather than "Summary Plan Description." This argument has no merit. An examination of the booklets issued by MDC between 1978 and 1988 reveals that they all contain the detailed information of the type required by ERISA. Moreover, the 1988 booklets—though not specifically identifying themselves as SPDs—contain the statement of rights and protections required of SPDs by 29 C.F.R. § 2520.102-3(t)(2). ERISA does not require that SPDs be titled as "summary plan descriptions" rather than "guides." The 1988 Guides are SPDs.

that extrinsic evidence should be admitted to interpret that ambiguous language. Courts routinely look to extrinsic evidence to interpret ambiguous language in ERISA plan documents. *See, e.g., Stewart v. KHD Deutz of America Corp.*, 980 F.2d 698 (11th Cir.1993); *Alexander v. Primerica Holdings, Inc.*, 967 F.2d 90 (3d Cir.1992); *Kane v. Aetna Life Ins.*, 893 F.2d 1283 (11th Cir.), *cert. denied*, 498 U.S. 890, 111 S.Ct. 232, 112 L.Ed.2d 192 (1990); *DeGeare v. Alpha Portland Indus., Inc.*, 837 F.2d 812 (8th Cir.1988), *vacated and remanded on other grounds*, 489 U.S. 1049, 109 S.Ct. 1305, 103 L.Ed.2d 575 (1989); *Edwards*, 851 F.2d 134; *In re White Farm Equip. Co.*, 788 F.2d 1186 (6th Cir.1986); *Eardman v. Bethlehem Steel Corp. Employee Welfare. Ben. Plans*, 607 F.Supp. 196 (W.D.N.Y.1984). Summary judgment is inappropriate where extrinsic evidence is needed to determine the meaning of ambiguous contract language. *IBEW, Local 47 v. Southern Cal. Edison Co.*, 880 F.2d 104, 107 (9th Cir.1989).

◼ Whether an ERISA plan is ambiguous is a matter of law. *Alexander*, 967 F.2d at 92. Summary judgment is appropriate in a contract case when the contract terms are clear and unambiguous, even though the parties may disagree as to their meaning. *International Union of Bricklayers & Allied Craftsman Local Union No. 20 v. Martin Jaska, Inc.*, 752 F.2d 1401, 1406 (9th Cir.1985). The test is whether the words are "reasonably susceptible" to more than one construction or interpretation. *Castaneda v. Dura–Vent Corp.*, 648 F.2d 612, 619 (9th Cir.1981). Summary judgment is proper where the words in question are not reasonably susceptible to the interpretation offered by the party claiming ambiguity. *Brobeck, Phleger & Harrison v. Telex Corp.*, 602 F.2d 866, 871 (9th Cir.), *cert. denied*, 444 U.S. 981, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979).

◼ The court finds no ambiguity in MDCs ROR language. Plaintiffs argue that

MDC's use of the terms "program" and "plans" in the 1988 SPD for retirees creates ambiguity.[6] Specifically, they argue that MDC's right to "amend or end any of the plans" could reasonably be interpreted to mean that MDC reserved the right to end any particular health plan, but not the health care benefits "program" altogether. However, the court does not believe the words in question are reasonably susceptible to the interpretation suggested by plaintiffs. The 1988 SPD describes a number of welfare plans, among them MDC's "health care plan," and "additional life insurance plan." MDC clearly reserved the right to end amend "any of the plans at any time." Even if one strains to read the ROR language to refer to different health care plans within a larger health care program, by reserving the right to end or amend "any of the plans," MDC necessarily reserved the right to end all of them.

Language similar to that used by MDC was held to be unambiguous in *Moore*, 856 F.2d at 490 ("The Company expects to continue the Metropolitan Insurance and Retirement Program and the other employee benefit plans. However, it reserves the right to change or discontinue any portion of the benefits described in this summary.") A host of authorities in other circuits have found such language unambiguous as a matter of law. *See, e.g., Boyer v. Douglas Components Corp.*, 986 F.2d 999, 1001 (6th Cir. 1993); *Alday*, 906 F.2d at 662; *Howe*, 896 F.2d at 1108; *Musto*, 861 F.2d at 904; *Moore*, 856 F.2d at 490; *DeGeare*, 837 F.2d at 814; *DeGrooth v. General Dynamics Corp.*, 837 F.Supp. 485, 488 (D.Conn.1993); *Etherington v. Bankers Life & Cas. Co.*, 747 F.Supp. 1269, 1274 (N.D.Ill.1990).

◼ In spite of plaintiffs' efforts to read ambiguity into the ROR language, the court holds that as a matter of law MDC unambiguously reserved the right to end any plan described in the 1988 SPD, including the

---

**6.** Plaintiffs do not argue that the wording of the 1978, 1982, and 1984 booklets is ambiguous. Those SPDs are titled "Group Insurance Pro-

gram for Salaried Employees" and the ROR language states explicitly, "MDC fully intends to

Health Care Plan as a whole.[7]  Thus, MDC did not breach its promise to retirees by terminating health care benefits.  The court grants summary judgment to MDC on Count Two of the First Amended Complaint.

## II.  *FAILURE TO MAINTAIN A PLAN*

In Count One of their First Amended Complaint, plaintiffs allege that MDC failed to maintain an ERISA plan.  Plaintiffs have advanced four separate theories under Count One, each of which is discussed below.

### A.  *Delegation of Authority to John McDonnell*

■ Plaintiffs have suggested that MDC's board of directors improperly delegated authority to amend the ERISA plan to President and CEO John McDonnell, because Maryland law requires any delegation of authority to a board-appointed committee of at least two directors, Md.Corps. & Ass'ns Code Ann. § 2–411.[8]  Plaintiffs misread Maryland law.  Section 2–411 refers to delegations of authority between directors and shareholders, not directors and officers.  Maryland law permits an officer to act on authority granted by board resolution, Md. Corps. & Ass'ns Code Ann. § 2–414(a), as does MDC's by-laws.

■ In any event, MDC's directors ratified and reaffirmed Mr. McDonnell's actions.  Under general principles of corporation law, a board may ratify and render binding any act by a subordinate officer or agent that it could have authorized originally.  *Birming-*

*ham v. Sogen–Swiss Int'l Corp. Retirement Plan,* 529 F.Supp. 86, 90 (S.D.N.Y.1981).

### B.  *Clarity and Accuracy*

Plaintiffs also claim that the SPDs lack the clarity and accuracy required by ERISA because the ROR is insufficiently conspicuous.[9]  In particular, plaintiffs argue that the amendment/termination provisions—while in the same typeface as the remainder of the text—have misleading captions ("Program Continuance" and "Future of the Program"), are purposefully buried at the end of lengthy booklets, and not properly indexed.  Moreover, plaintiffs assert, none of the provisions is labelled warning readers that benefits may be terminated, modified, ended or amended.

The Ninth Circuit has held that "[w]hether these provision satisfy ERISA is a legal question."  *Arnold v. Arrow Transp. Co.,* 926 F.2d 782 (9th Cir.1991).  In *Arnold,* the court upheld a trial court finding that an ROR at the end of a twelve page booklet satisfied the requirements of ERISA, where the ROR was in the same typeface as the preceding pages, the ROR was in close proximity to the summary of benefits, and the language of the ROR was clear.  Though MDC placed its ROR language at the end of longer booklets, like the employer in *Arnold,* it used the same typeface it had in the preceding pages and unambiguous language.  Moreover, the MDC ROR language is found in a section labelled "General Information" which is appropriate as it applied to all plans described in the booklet.

---

continue the Group Insurance Program indefinitely but reserves the right to end or amend it."

7. Because the court holds that MDC's ROR is unambiguous, it need not apply the reasonable expectations doctrine, which the Ninth Circuit recently adopted as a "principle of federal common law informing interpretation of ERISA-governed insurance contracts."  *Saltarelli v. Bob Baker Group Medical Trust,* 35 F.3d 382, 386 (9th Cir.1994).  The reasonable expectations doctrine, which the *Saltarelli* court lifted from California law, applies only when the policy language is held to be ambiguous.  *Chamberlain v. Allstate Ins. Co.,* 931 F.2d 1361, 1366 (9th Cir.1991); *Producers Dairy Co. v. Sentry Ins. Co.,* 41 Cal.3d 903, 912, 226 Cal.Rptr. 558, 718 P.2d 920 (1986).  Moreover, it is unclear that the *Saltarelli*

decision would extend to the interpretation of ROR language in an SPD.

8. MDC is a Maryland Corporation.

9. Under ERISA regulations,

Any description of exception, limitations, reductions, and other restrictions of plan benefits shall not be minimized, rendered obscure or otherwise made to appear unimportant.  Such exceptions, limitations, reductions, or restrictions of plan benefits shall be described or summarized in a manner not less prominent than the style, captions, printing type, and prominence used to describe or summarize plan benefits.

29 C.F.R. § 2520.102–2(b).

Plaintiffs argue that this case is more like *Bower*, 725 F.2d at 1224, where the Ninth Circuit held that the district court had erred in granting summary judgment for defendant where the disclaimer was presented in substantially smaller type than the remainder of the text. Unlike *Bower*, however, the typeface of MDC's ROR is identical to the remainder of the text used throughout its SPDs.

### C. *Omission of Description of HMO Benefits*

Plaintiffs also argue that MDC failed to maintain a plan as required by ERISA because the SPDs did not include summaries of benefits provided by HMOs. However, as MDC correctly notes in its reply brief, 29 C.F.R. § 2520.102–5 relieves an employer of the duty of including such information regarding HMOs in the SPD.[10] Thus, plaintiffs' argument on this point is groundless.

### D. *Procedure for Amendment and Identity of Person With Authority to Amend*

Finally, plaintiffs argue that the SPDs fail to comply with 29 U.S.C. § 1102(b)(3), which requires that a plan must "provide a procedure for amending such plan, and for identifying the persons who have authority to amend the plan." MDC contends that its ROR language satisfies the requirement of § 1102(b)(3), because it identified the "Company" was the person authorized to amend the plan.

Plaintiffs ask the court to adopt the reasoning of *Schoonejongen v. Curtiss–Wright Corp.*, 18 F.3d 1034 (3d Cir.), *cert. granted*, —— U.S. ——, 115 S.Ct. 42, 129 L.Ed.2d 937 (1994), in which the Third Circuit recently held that while an ROR identifying "the Trustees" of a company as persons authorized to amend satisfied § 1102(b)(3), an ROR identifying only "the Company" did not. *Id.* at 1039. The *Schoonejongen* court ruled

that in the latter case, "one is unable to tell what individuals or bodies within the Company could promulgate an effective amendment." *Id.*

However, the majority of circuits addressing the adequacy of amendment procedures have refused to grant the substantive relief sought by plaintiffs solely because of the absence of a plan amendment procedure. *See, e.g., Adams v. Avondale Indus., Inc.*, 905 F.2d 943, 949 (6th Cir.), *cert. denied*, 498 U.S. 984, 111 S.Ct. 517, 112 L.Ed.2d 529 (1990); *Biggers*, 4 F.3d at 295–96; *Murphy*, 850 F.Supp. at 1379–82. Thus, even if the court were to adopt the hair-splitting approach of *Schoonejongen*, MDC would still be entitled to summary judgment because plaintiffs cannot show that they have suffered any injury as a result of the defect.

Plaintiffs argue that they do not have to prove any injury, citing *Blau v. Del Monte Corp.*, 748 F.2d 1348 (9th Cir.1984). While noting that "[o]rdinarily, a claimant who suffers because of a fiduciary's failure to comply with ERISA's procedural requirements is entitled to no substantive remedy," *id.* at 1353, *Blau* reversed a summary judgment in favor of the defendant employer where the defendant engaged in "arbitrary and capricious" procedural violations.

However, nothing in the record here even suggests that MDC's behavior approached the degree of arbitrariness or capriciousness found in *Blau*. Moreover, in several subsequent cases, the Ninth Circuit has affirmed summary judgment for defendants where the plaintiffs failed to show any substantive harm resulting from procedural violations. *Bogue v. Ampex Corp.*, 976 F.2d 1319 (9th Cir.1992) ("The defendants concede that [they] may have made some procedural violations, but they contend that Bogue has not met his requirement of showing that any procedural defects caused him substantive harm or involved a substantive violation of ERISA.

**10.** 29 C.F.R. § 2520.102–5 provides:

> The summary plan description of an employee welfare benefit plan under which some or all benefits are provided through membership in one or more qualified health maintenance organizations ... shall not be required to include, with respect to any such qualified health

maintenance organization, the information described in § 2520.102–3(j)(2), (*l*), (q) and (s) of this part [dealing with eligibility, summary of benefits, circumstances which may result in loss of benefits, funding methods, procedures for presenting claims and remedies available under the plan for redress of claims].

They are correct."); *Hancock v. Montgomery Ward Long Term Disability Trust,* 787 F.2d 1302, 1308 (9th Cir.1986) ("Substantive remedies are available for procedural defects under ERISA only when the defects 'caused a substantive violation or themselves worked a substantive harm.'"); *Ellenburg v. Brockway, Inc.,* 763 F.2d 1091, 1096 (9th Cir.1985) ("A substantive remedy would be appropriate only if the procedural defects caused a substantive violation or themselves worked a substantive harm.") (citing *Blau* ).

▆▆▆ Thus, the mere fact that MDC's ERISA plan might contain minor procedural defects is not a reason to deny summary judgment to defendant, where plaintiffs are unable to show that any such defects worked a substantive harm on them.

In conclusion, MDC is entitled to summary judgment on Counts One and Two of the First Amended Complaint. Consequently MDC is also entitled to summary judgment for Counts Eleven and Twelve, which seek declaratory and equitable relief on the first two counts. For the same reasons which support the granting of MDC's motion for summary judgment, plaintiffs' motion for partial summary judgment must be denied.

## ORDER

**IT IS ORDERED:**

1.  Defendant's motion for summary judgment is **GRANTED.**

2.  Plaintiffs' motion for partial summary judgment is **DENIED.**

3.  Judgment shall be entered consistent herewith.