**PUBLISH**

_____

**UNITED STATES COURT OF APPEALS**

Filed 7/5/96

**TENTH CIRCUIT**

_____

| | |
|---|---|
| BECKY J. KIDD, | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | )     No. 95-2066 |
| | ) |
| TAOS SKI VALLEY, INC., | ) |
| | ) |
| Defendant-Appellee. | ) |

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(CIV-93-327-JC)

_____

Grant Marylander (Jim Leventhal and Natalie Brown, of Leventhal & Bogue, Denver, Colorado, and Marion J. Craig, III, Roswell, New Mexico, with him on the briefs) of Leventhal & Bogue, Denver, Colorado, for Plaintiff-Appellant.

Joe L. McClaugherty (Jere K. Smith with him on the brief), Santa Fe, New Mexico, for Defendant-Appellee.

_____

Before **BRORBY, BARRETT, and LIVELY\***, Circuit Judges.

_____

**BARRETT**, Senior Circuit Judge.

_____

\*The Honorable Pierce Lively, Senior Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation.

_____

Becky J. Kidd (Kidd) appeals from a memorandum opinion and

order granting Taos Ski Valley, Inc. (TSV) summary judgment and dismissing her complaint with prejudice.

Kidd suffered a broken back, ribs, hip, and pelvis in a skiing accident at TSV. "Her injuries were possibly received when she crossed a diversionary rope located on an area permanently marked as a slow skiing area by a huge orange banner." (Appellant's Appendix, Vol. II, Memorandum Opinion, Undisputed Facts, at 445). "The black and yellow rope, held up by bamboo poles and marked with strips of orange fluorescent flagging, was intended to close off a portion of the mountain to prevent collisions between skiers returning to the base from different sides of the mountain." Id. "Plaintiff, an experienced TSV skier, never saw the rope closure." Id. at 445-46.

Kidd filed a complaint in which she alleged, inter alia, that: TSV, in installing the diversionary rope, had breached its obligations under New Mexico's Ski Safety Act, N.M. Stat. Ann. §§ 24-15-1, et seq. (the Act), by failing to properly mark, warn and/or correct a dangerous hazard created by the suspension of the rope between two poles (Count I); TSV had acted with wanton or gross negligence in maintaining the unmarked rope and she was, accordingly, entitled to punitive damages (Count II); TSV breached it contractual obligations under a special use permit with the United States under which she was a third party beneficiary (Count III); and TSV's installation of the rope created an inherently

- 2 -

dangerous condition, thereby imposing the duty of highest care on TSV (Count IV).

TSV moved to dismiss Counts II, III, and IV for failure to state a claim upon which relief could be granted. The district court denied TSV's motion to dismiss Kidd's Count II punitive damage claim, concluding that although the Act was silent on the availability of punitive damages, general New Mexico law principles allowed for the recovery of punitive damages in limited circumstances, including conduct committed with a wanton disregard of a plaintiff's rights. The district court did, however, grant TSV's motion to dismiss Counts III and IV, Kidd's third party beneficiary and inherently dangerous condition claims.

In dismissing Count III, the district court concluded that the "language of the statute indicates that the legislature intended the Act as the sole remedy for skiers" and that New Mexico case law "provide[s] persuasive authority indicating that the state courts would reject Plaintiff's theory of liability based on a third party beneficiary cause of action." (Appellant's Appendix, Vol. I at 73-74). In dismissing Count IV, the district court concluded that the inherently dangerous activity doctrine "is inconsistent with the Act because it would permit the imposition of additional duties on ski operators" and that the "Act was intended to limit the duties which can be imposed upon ski area operators [and] therefore forecloses the application of the" doctrine. Id.

at 75-76. Kidd's subsequent motion for reconsideration of the dismissal of Count III was denied.

Thereafter, TSV moved for summary judgment on Kidd's remaining claims and Kidd moved for partial summary judgment on the issue of TSV's negligence. Following briefing, the district court entered a memorandum opinion and order granting TSV summary judgment and dismissing Kidd's complaint with prejudice. In so doing, the district court found that: although TSV offered convincing evidence that Kidd breached her duty to ski safely, Kidd's testimony that she was not skiing out of control created a genuine issue of material fact making summary judgment improper, (Appellant's Appendix, Vol. II at 447); Kidd failed to produce competent evidence from which a reasonable juror could conclude that the rope closure was not in accordance with industry usage and National Ski Area Association (NSAA) standards, id. at 449; and, no reasonable juror could conclude that the closure itself created a hazard under the Act requiring TSV to warn skiers of its presence. Id. at 451.

On appeal, Kidd contends that the district court erred when it granted TSV's motion for summary judgment, barred her from obtaining critical discovery, and dismissed her third party beneficiary claim.

I.

Kidd contends that the district court erred when it granted

- 4 -

summary judgment in favor of TSV.  Kidd argues that summary judgment was erroneous because she presented substantial evidence that TSV breached its duties under §§ 24-15-7(I) and (C) of the Act.

We review a district court's grant or denial of summary judgment de novo, applying the same legal standard used by the district court.  Lancaster v. Air Line Pilots Ass'n Int'l., 76 F.3d 1509, 1516 (10th Cir. 1996).  Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Hagelin for President Comm. of Kan. v. Graves, 25 F.3d 956, 959 (10th Cir. 1994), cert. denied, ___ U.S. ___ (1995).  When applying this standard, we examine the factual record and reasonable inferences therefrom in the light most favorable to the non-moving/opposing party.  Wolf v. Prudential Ins. Co. of Am., 50 F.3d 793, 796 (10th Cir. 1995).

a.

Kidd asserts that summary judgment was inappropriate because there was substantial evidence that TSV breached its duty under § 24-15-7(I) of the Act.  This section provides that "[e]very ski area operator shall have the following duties with respect to the operation of a skiing area: . . . to warn of or correct particular hazards or dangers known to the operator where feasible to do so."

Kidd argues that TSV breached this duty when it installed the

- 5 -

single strand diversionary rope and blocked off an otherwise skiable area without giving the skier sufficient warning. The district court rejected these arguments, concluding that:

> The evidence submitted by the parties in this case demonstrates as a matter of law that the TSV rope closure, by virtue of its location and purpose, cannot qualify as a hazard under the Act. The rope is located in a well-marked slow skiing zone near the base of the mountain. The closure serves to prevent, not cause, collisions between skiers returning to the base area. Moreover, the undisputed evidence shows that the rope has been in place since 1978, and [over one] million skiers have managed to ski past it without injury.

(Appellant's Appendix, Vol. II at 447).

Kidd maintains that this conclusion was erroneous and that summary judgment improper when, as here: TSV's expert acknowledged that a rope between two poles on a ski slope could be a hazard if a skier did not have time to react to the rope or could not see it. (Appellant's Appendix, Vol. II at 333); the evidence was undisputed that Kidd, an experienced TSV skier did not see the rope, id. at 445-46; Kidd presented the testimony of another skier who stated that the "rope was not reasonably visible" and that "[i]n skiing down the slope to Becky J. Kidd I did not see the rope," id. at 309; and photographs taken immediately after the accident demonstrated the rope's lack of visibility against the white background.

TSV responds that summary judgment was proper based on the undisputed evidence that the area of Kidd's accident had been marked off and closed to skiing for at least twelve years without

- 6 -

incident and its expert's testimony that the rope did not create a hazardous situation and that the rope complied with the Act. TSV also maintains that a ski area operator's duty to warn of or correct particular hazards or dangers under § 24-15-7(I) is limited to those hazards or dangers which are known to the operator and that Kidd failed to present any evidence that TSV knew that the rope closure was a hazard.

Although the determination of "[w]hether a duty [under the Act] has been breached is a question of fact," Lopez v. Ski Apache Resort, 836 P.2d 648, 655 (N.M. Ct. App.), cert. denied, 113 N.M. 815 (1992), the determination of "[w]hether a duty exists is generally a question of law for the court to determine." Id. As a matter of law, the duty imposed on ski area operators by § 24-15-7(I) "is limited to situations where the particular hazard is both known to the ski area operator and warning of or correcting the particular hazard is feasible." Id. at 656 (emphasis original).

Applying Lopez, we hold that the district court did not err in granting TSV summary judgment on Kidd's § 24-15-7(I) claim. Kidd failed to present any probative evidence that the diversionary rope in question was a "particular hazard . . . known to" TSV. On the contrary, the undisputed evidence was that the rope had been in place since 1978 and over one million skiers had managed to ski past it without injury. Therefore, TSV was entitled to judgment on this claim as a matter of law.

b.

Kidd reasons that she presented substantial evidence that TSV breached its duty under § 24-15-7(C) of the act making summary judgment on this claim improper.

Section 24-15-7(C) provides:

> Every ski operator shall have the following duties with respect to the operation of a skiing area:
>
> *            *            *
>
> to mark conspicuously the top or entrance to each slope, trail or area with the appropriate symbol for its relative degree of difficulty; and those slopes, trails or areas marked at the top or entrance with the appropriate symbols as established or approved by the national ski area association . . . .

(Emphasis added).

Kidd asserts that she presented evidence which created a triable issue on whether TSV breached its duty under § 24-15-7(C) to comply with NSAA standards when it installed a single strand diversionary rope rather than multiple ropes or other barriers. Kidd argues that the evidence included the fact that although the NSAA had no written standards for marking closures, industry practice dictated the proper use of ropes for closures; TSV's expert on NSAA standards stated that rope closures should be as visible as possible, that multiple ropes create a more effective barrier than single ropes, and that unless there are indications to the contrary, three rope barriers should be used rather than a single rope (Appellant's Appendix, Vol. II at 335, 340 and 343);

- 8 -

and there was nothing to prevent TSV from using multiple ropes. Kidd maintains that this evidence created a triable issue on whether TSV complied with NSAA standards making summary judgment on this claim improper.

TSV responds that: the only issue is whether the rope closure at issue complied with NSAA standards; Kidd is attempting to divert the inquiry away from whether TSV complied with NSAA standards by focusing on what TSV could have done rather than on what it did; and its expert testimony established, without exception, that the rope closure complied with NSAA standards.

We agree with the district court's findings that Kidd produced "[o]nly speculation, not expert testimony . . . in attempting to rebut Defendant's submitted compliance with the Act" and that "the record [is] absent of competent evidence that the closure fell outside industry norms established by NSAA standards." (Appellant's Appendix, Vol. II at 450). Kidd failed to meet her burden as a nonmoving party of producing specific facts "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves" to avoid TSV's properly supported summary judgment motion. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Her conclusory allegations are not sufficient to defeat TSV's motion. Milton v. Scrivner, Inc., 53 F.3d 1118, 1125 (10th Cir. 1995).

Kidd contends that the district court erred when it barred her from obtaining critical discovery relevant to issues raised in the summary judgment proceedings. Kidd maintains that the district court abused its discretion when it prevented her from deposing TSV employees and from designating a visual acuity expert.

a.

Kidd states that the district court abused its discretion when it prevented her from deposing TSV employees concerning the hazardous nature of the rope. Under Fed. R.Civ. P. 26(c), the district court may limit or bar discovery. The decision of a district court to enter a protective order under Rule 26(c) is reviewed for an abuse of discretion. Boughton v. Cotter Corp., 65 F.3d 823, 828 (10th Cir. 1995). Under this standard, "we will not disturb a trial court's decision absent 'a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.'" Thomas v. International Business Machs., 48 F.3d 478, 482 (10th Cir. 1995)(citations omitted).

Senior TSV employees testified that patrol members had been trained concerning the use of markings and compliance with both TSV and the Act's standards. They also testified that patrol members were instructed to insure that markings were visible. When Kidd attempted to depose ski patrol members on their training and

whether the rope in question was appropriately marked, TSV filed a motion for a protective order.

Following a hearing, the magistrate judge entered a discovery order granting TSV's motion "to the extent Defendant seeks to bar the deposition of the Chief Groomer and the Assistant Head of the Ski Patrol at this time, based upon the court's finding that subordinate employees should not be deposed to the extent the same information may be obtained from supervisors." (Appellant's Appendix, Vol. I at 109).

Kidd objected to the magistrate's order. Thereafter, the district court entered a memorandum opinion overruling Kidd's objections, finding, inter alia:

> Plaintiff next objects to Magistrate Judge Svet's limitation of questioning as to certain non-supervisory employees. The court has reviewed the deposition testimony provided by both the Plaintiff and Defendant and fails to identify the inconsistencies claimed by the Plaintiff. In fact, Plaintiff's assertions misstate the evidence. The clear import of all of the depositions is that the supervisory [personnel] are ultimately responsible for the marking of the trails, and that the non-supervisory patrol members have little if any discretion in deciding how trails and hazards are to be marked.

(Appellant's Appendix at 442B-42C).

We agree. Michael Blake, TSV's General Manager, testified that he had the "ultimate responsibility" for properly marking TSV. (Appellant's Appendix, Vol. II at 285). Under these circumstances, we hold that the district court did not abuse its discretion in overruling Kidd's objections to the magistrate judge's order.

- 11 -

b.

Kidd declares that the district court abused its discretion when it prevented her from designating a visual acuity expert. The decision to allow the testimony of an expert not described or listed in the pretrial order rests with the sound discretion of the district court and will not be disturbed absent an abuse of discretion. F.D.I.C. v. Oldenburg, 34 F.3d 1529, 1556 (10th Cir. 1994).

In the initial pre-trial report, Kidd agreed to identify her liability expert witnesses by September 15, 1993. Kidd did not identify any liability expert witnesses by that date. However, Kidd retained additional counsel on January 15, 1994. On January 21, 1994, Kidd's additional counsel filed a motion to add Freeman Hall, a visual acuity specialist and engineer, as an expert witness. The magistrate judge denied Kidd's motion.

Following a review of Kidd's objections to the magistrate judge's order, the district court entered a memorandum opinion overruling Kidd's objections, stating:

> Plaintiff . . . objects to the Magistrate Judge's refusal to permit the endorsement of an expert witness . . . . Plaintiff had sought to add an additional expert witness over four months after the deadline for designating experts had passed. Plaintiff has provided no reason for her delay, and the court can find no reason other than the recent addition of new counsel for the Plaintiff. The court therefore finds that Magistrate Judge Svet's order denying the addition of the expert . . . is not clearly erroneous or contrary to law.

(Appellant's Appendix at 442B).

Kidd asserts that the district court abused its discretion when it prevented her from designating a visual acuity expert who would have testified that the rope in question was not visible when, as here: the trial date had not been set; TSV would not have been prejudiced; she had been diligent, with the exception of designating the expert, in conducting her discovery; she did not appreciate the need for a visual acuity expert until she retained additional counsel; and a visual acuity expert was a critical expert who would explain to the jury what factors affected the rope's visibility and why it could not be seen by skiers.

We hold that the district court did not abuse its discretion in refusing to allow Kidd to designate a visual acuity expert. Kidd's request to designate an expert was made more than four months after the time period for designating such experts had lapsed. Moreover, Kidd provided no reason for her delay, save to allege that she was not aware of the need for such an expert until after she had retained additional counsel and that the expert would explain why the rope could not be seen by skiers. Neither of these assertions are sufficient to support Kidd's claim that the district court abused its discretion, particularly in that it was undisputed that Kidd, "an experienced TSV skier, never saw the rope closure." (Appellant's Appendix, Vol. II, Memorandum Opinion, Undisputed Facts, at 445).

III.

Kidd contends that the district court erred when it dismissed her third party beneficiary claim. We review <u>de novo</u> the district court's dismissal for failure to state a claim. <u>Seymour v. Thorton</u>, 79 F.3d 980, 984 (10th Cir. 1996).

In Count III, Kidd alleged, <u>inter allia</u>:

Under the terms of the Permit between the United States and the Defendant, Defendant is to conduct the operations of the ski area, with full recognition of the need of public safety,[1] and is to regularly inspect the ski area and correct any hazardous conditions.

The Defendant's maintaining and permitting the use of an unmarked Rope in the middle of the ski area constituted a breach of this lease term.

The United States . . . in granting the Defendant a right to use [its] property, required that the operation be conducted with full recognition for the need of public safety. The people of the United States, including the Plaintiff, are third-party beneficiaries of the provisions the Lease Agreement between the United States

---

[1]     Section "24. <u>Safety</u>" of the Special Use Permit between TSV and the Forest Service provided in part:

The permittee [TSV] shall conduct the operations authorized by this permit with full recognition of the need for public safety. In furtherance of this requirement, the permittee shall prepare a safety plan designed to provide adequate safety to the users of the permitted area and facilities. The plan shall have written approval of the Forest Supervisor prior to the operation of the facilities for public-use purposes. The plan shall include, but shall not be limited to, avalanche prevention and control; amount and kind of rescue equipment; conditioning of trails; and frequency of permittee inspection of area, equipment, machinery, and uphill facilities.

(Appellant's Appendix, Vol. I at 37).

- 14 -

and the Defendant.  The Defendant's operation of the ski area, in violation of the needs for "Public Safety", constitute a breach of the Agreement.  Plaintiff, was a third-party beneficiary of this Lease Contract, had the right to expect the contract to be performed and therefore should be allowed to recover her damages caused by Defendant's breach.

(Appellant's Appendix at 5). (Emphasis added).

In dismissing Count III, the district court concluded:

> The question before the court is whether the Act provides the exclusive remedy available to the Plaintiff.
>
> \*             \*             \*
>
> The language of the statute indicates that the legislature intended the Act as the sole remedy for skiers.  The Act states that '[u]nless a ski operator is in violation of the Ski Safety Act, with respect to the skiing area . . ., and the violation is a proximate cause of the injury complained of, no action shall lie against such ski area, operator by any skier [or his representative].' . . . Under New Mexico law when the meaning of a statute is plain, it must be given effect, and there is no room for construction . . . . Here, the language of the Act is clear and unambiguous, stating that no action shall lie against a ski area operator unless the operator violates the Act and that violation is the proximate cause of the skier's injury.
>
> The precise question of whether a ski operator is liable to a plaintiff as a third party beneficiary has not been addressed by any appellate court in New Mexico. In Wood v. Angel Fire Ski Corp., 108 N.M. 453, 355 (Ct.App. 1989), the New Mexico Court of Appeals held that the Act 'limited in part the tort liability of ski operators.'  Later, in Lopez v. Ski Apache Resort, 114 N.M. 202 (Ct.App. 1992), the plaintiff sued for tort damages resulting from personal injury.  Again, the Court of Appeals held that the 'provisions of the Act were intended by the legislature to exclusively control each of plaintiff's claims herein.'
>
> From the above cases, it is clear that the Act is the sole remedy for an action based in tort.  In regards to a contract claim, however, the above cases provide

- 15 -

only dicta. Yet, these opinions provide persuasive authority indicating that the state courts would reject the Plaintiff's theory of liability based on a third party beneficiary cause of action. Since the clear language of the Act must be given its plain effect, this Court concludes that a state court hearing this issue would reject the third party beneficiary theory contained in Count III.

(Appellant's Appendix, Vol. I at 73-74).

We agree with the district court that New Mexico case law provides "persuasive authority indicating that the state courts would reject Kidd's theory of liability based on a third party beneficiary cause of action."

**AFFIRMED.**

- 16 -