JOHN DEERE HEALTH BENEFIT PLAN FOR SALARIED EMPLOY-EES, and John Deere Health Care, Inc., Plaintiffs,

v.

Jeffrey A. CHUBB, Administrator of the Estate of Patricia Ann Franklin, Deceased, Defendant.

Civil Action No. 97–1266–MLB.

United States District Court, D. Kansas.

Feb. 17, 1999.

**1132**

Jeffrey A. Chubb, Independence, KS, pro se.

Douglas G. Ott, Hall, Levy, Devore, Bell, Ott & Kritz, Coffeyville, KS, pro se.

Thomas L. Theis, Sloan, Listrom, Eisenbarth, Sloan & Glassman, Topeka, KS, pro se.

### MEMORANDUM AND ORDER

BELOT, District Judge.

This matter is before the court pursuant to John Deere Health Care, Incorporated's (John Deere) motion and memorandum in support of summary judgment (Doc. 23). John Deere is the administrator of the John Deere Health Benefit Plan for Salaried Employees (the "Plan"). In deciding the motion, the court has considered all relevant documents including, but not limited to, plaintiffs' motion and memorandum (Doc. 23), defendant's response (Doc. 25) and John Deere's reply (Doc. 26). For the reasons discussed in this memorandum, John Deere's motion (Doc. 23) is denied.

### I. NATURE OF THE CASE

This is an action involving the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001–1461. John Deere seeks to enforce the Plan's alleged subrogation rights against the estate of Patricia Ann Franklin (Franklin), represented by its administrator, Jeffrey A. Chubb (defendant). Franklin was an employee of Funk Manufacturing (Funk), which provides benefits for its employees and their dependents through the Plan.

Franklin, as the result of negligent medical treatment, sustained serious injuries which ultimately resulted in her death. Franklin's husband, individually and on behalf of Franklin's estate, filed suit against various medical providers who treated his wife. The malpractice suit resulted in a settlement. John Deere claims the Plan has a right of subrogation against Franklin's estate for any recovery obtained from the settlement to the extent the Plan provided medical benefits for Franklin's treatment.

### II. SUMMARY JUDGMENT STANDARDS

The usual and primary purpose "of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Fed.R.Civ.P. 56(c) directs the entry of summary judgment in favor of a party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." An issue is "genuine" if sufficient evidence exists on each side "so that a rational trier of fact could resolve the issue either way" and "[a]n issue is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citations omitted).

The moving party must initially show both an absence of a genuine issue of material fact, as well as entitlement to judgment as a matter of law. *Id.* at 670. The nature of the showing depends upon whether the movant bears the burden of proof at trial with the particular claim or defense at issue in the motion. If the nonmoving party bears the burden of proof, the movant need not "support its motion with affidavits or other similar materials *negating* the opponent's" claims or defenses. *Celotex*, 477 U.S. at 323, 106

S.Ct. 2548 (emphasis in original). Rather, the movant can satisfy its obligation simply by pointing out the absence of evidence on an essential element of the nonmovant's claim. *Adler,* 144 F.3d at 671 (citing *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548). On the other hand, if the movant has the burden of proof on a claim or defense raised in a summary judgment motion, it must show that the undisputed facts establish every element of the claim or defense. *E.g., United States v. Four Parcels of Real Property,* 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc).[1]

Once the moving party properly supports its motion, the burden shifts to the nonmoving party, "who may not rest upon the mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Muck v. United States,* 3 F.3d 1378, 1380 (10th Cir.1993). In setting forward these specific facts, the nonmovant must identify the facts "by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler,* 144 F.3d at 671. If the evidence offered in opposition to summary judgment is merely colorable or is not significantly probative, summary judgment may be granted. *Cone v. Longmont United Hosp. Ass'n,* 14 F.3d 526, 533 (10th Cir.1994). A party opposing summary judgment "cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith,* 853 F.2d 789, 793 (10th Cir.1988). Put simply, the nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

In the end, the court must determine "whether there is the need for a trial— whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Accordingly, the court must review the "factual record and reasonable inferences therefrom in the light most favorable to the nonmoving/opposing party." *Kidd v. Taos Ski Valley, Inc.,* 88 F.3d 848, 851 (10th Cir.1996); *see also Anderson,* 477 U.S. at 255, 106 S.Ct. at 2514. If sufficient evidence exists on which a trier of fact could reasonably find for the non-moving party, summary judgment is inappropriate. *Prenalta Corp. v. Colorado Interstate Gas Co.,* 944 F.2d 677, 684 (1991).

## III. STATEMENT OF FACTS

The Plan is a self-funded employee welfare benefit plan within the meaning of ERISA, 29 U.S.C. § 1002(1). (Doc. 23 at ¶ 1; Doc. 25 at ¶ 1). The Plan provides benefits to Funk employees and their dependents. As an employee of Funk, Franklin was a participant in the Plan.

In January 1992, Franklin was seriously injured during an unspecified medical procedure at Coffeyville Regional Medical Center (CRMC). Following the procedure, Franklin lapsed into a comatose state and remained unconscious until her death on August 10, 1996. (Doc. 27 at ¶ 3). As a result of her injuries, Franklin's husband, both individually and as conservator of Franklin's estate, filed a medical malpractice suit against CRMC, David Slayton (Slayton), C.R.N.A., and Stephen Miller (Miller), M.D. (Doc. 27 at ¶ 4). During the course of Franklin's care and treatment,

---

1. The court notes that the Rule 56 summary judgment standard is identical to that of a Rule 50 judgment as a matter of law standard, *e.g., Pendleton v. Conoco, Inc.,* 23 F.3d 281, 286 (10th Cir.1994), and that "[t]he standard is particularly strict when such a ruling is made in favor of the party with the burden of proof." *Weese v. Schukman,* 98 F.3d 542, 547 (10th Cir.1996). Under this strict test, the party bearing the burden of proof at trial earns a favorable ruling only when evidence is presented that "the jury would not be at liberty to disbelieve." *Id.*

the Plan paid medical benefits in the amount of $265,926.39. (Doc. 27 at ¶ 3).

Franklin's husband entered into a settlement agreement in November 1992 with Slayton, Miller and the Kansas Health Care Stabilization Fund releasing them from the suit in return for a cash payment of $25,000 and a lifetime annuity of $3250 per month.[2] (Doc. 27 at ¶ 5). Similarly, in April 1993, Franklin's husband entered into a settlement agreement with CRMC and its insurer releasing CRMC in return for $10,000. (Doc. 27 at ¶ 6).[3]

The plan agreement[4] contains a section addressing the Plan's right of subrogation to any right of recovery a plan participant or beneficiary may have for injuries caused by third party tort-feasors. The section provides:

Section 5. Subrogation

In the event of any payment of benefits under the plan for which an employee or employee's dependent has a claim or cause of action against any person or organization, the Company[5] shall be subrogated to all right of recovery by the employee or employee's dependent with respect to any settlement or judgment for personal injury. The employee and the employee's dependent agree as follows:

A. To fully cooperate with the Company in obtaining information about the loss and its cause;

B. To notify the Company of any claim for damages made on behalf of the employee or employee's dependent in connection with the loss;

C. To include the amount of the benefits paid by the Company on behalf of the employee or employee's de-

pendent in claims for damages against other parties;

D. To provide the Company with a lien, to the extent of the cash value of the services and supplies provided. Such lien may be filed with the person whose act caused the injuries, his or her agent, or a court having jurisdiction in the matter;

E. To reimburse the Company from any damages collected to the extent of the cash value of the services and supplies immediately upon collection of damages, whether by settlement or judgement. The Company shall be reimbursed first from any settlement or judgement and, if any balance then remains, it shall be given to the employee or the employee's dependent;

F. To pay the Company all costs and expenses, including attorney's fees, which shall be incurred or expended by the Company in obtaining or attempting to obtain payment from the employee or the employee's dependent if the employee or employee's dependent fails or refuses to reimburse the Company pursuant to this provision; and

G. To permit the Company to file a lawsuit in the name of the employee or employee's dependent against the person whose act caused the injuries.

(Doc. 23 at ¶ 7 and Ex. A at 144–144.1; Doc. 25 at ¶ 1).

In addition to the subrogation provision in the plan agreement, a summary plan description (SPD) contains a section enti-

---

**2.** The record does not specify the measuring life for the annuity of $3250.

**3.** The specifics of the settlements are unclear from the record. For instance, the court is unsure whether any of the payments were made to Franklin's husband individually or whether both Franklin's claims and Franklin's husband's claims were released.

**4.** For ease of reference, the document entitled "The Health Benefit Plan for Salaried Employees," doc. 23, Ex. A, is referred to as the "plan agreement." The plan agreement details the plan participant and beneficiary's rights and obligations.

**5.** "Company" is defined as "Deere & Company and its various U.S. subsidiaries and affiliates." (Doc. 23, Ex. A at 1).

tled "Subrogation." The SPD subrogation section provides:

> Suppose you or your dependent is involved in an accident which is determined to be the responsibility of a third party. Then if this plan has paid expenses associated with the accident, the Company reserves the right to seek reimbursement from the third party.

(Doc. 23 at ¶ 9 and Ex. B at 37; Ex. 25 at ¶ 1). An introductory clause explains that the SPD is only a general summary of the Plan's terms, and if there is a conflict between the plan agreement and the SPD, the plan agreement controls. (Doc. 23 at ¶ 8, and Ex. B at 4; Doc. 25 at ¶ 1).

Michael Goheen (Goheen) testified that the SPD was distributed to all Funk employees at Franklin's workplace in November 1991, and that he had no knowledge that Franklin failed to receive the SPD during the distribution.[6] (Doc. 23, Ex. D at 43–44). Goheen also testified that the SPD was mailed to all Funk employees, including Franklin, in March 1992. (Doc. 23, Ex. D at 42–43). In an affidavit, Franklin's husband claims to have no knowledge of whether Franklin ever received the SPD in November 1991 or any other time prior to her injuries in January 1992. (Doc. 25, attached affidavit).

As Goheen testified and Franklin's husband admits, a letter was sent to Franklin's residence in October 1992 informing Franklin's husband of the Plan's right of subrogation and requesting information about any possible recovery from third parties. (Doc. 23, Ex. D at 33–34 and Ex. E; Doc. 25 at ¶ 2). Apparently, there was never a response to the letter. A second letter sent to Franklin's residence in December 1992 requesting information about Franklin's injuries and any action taken against third-parties. (Doc. 26, Ex. F).

Franklin's husband provided the required information. John Deere contends that Funk was unaware that Franklin's husband was in the process of settling the medical malpractice claims against Slayton and Miller until the settlement was complete. (Doc. 23 at ¶ 14). In response, Franklin's husband claims he personally informed Funk in February 1992 of Franklin's personal injury lawsuit. (Doc. 25, attached affidavit). Absent, however, is any allegation that he informed Funk of the Slayton/Miller settlement process or the actual settlement.

Defendant admits that Franklin's husband did not notify Funk or John Deere of the Miller/Slayton settlement of February 1993. (Doc. 23 at ¶ 11; Doc. 25 at ¶ 1). Similarly, neither Funk nor John Deere were notified of the CRMC settlement before it occurred in April 1993.[7] (Doc. 23 at ¶ 15). Despite the language in the plan agreement and SPD, the Plan has never been reimbursed by Franklin's estate nor from Franklin's husband. (Doc. 27 at ¶ 10).

## IV. DISCUSSION AND ANALYSIS

"ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans, and to protect contractually defined benefits." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989) (internal quotations and citations omitted). It regulates both pension benefit plans and welfare benefit plans. *See Member Servs. Life Ins. Co. v. American Nat'l Bank & Trust Co. of Sapulpa*, 130 F.3d 950, 954 (10th Cir.1997). Here, the Plan administered by John Deere is, as the parties agree, an employee welfare benefit plan within the meaning of

---

6. The record does not identify or explain who Goheen is or what his responsibilities include. Only portions of his deposition were provided to the court. However, defendant does not challenge Goheen's testimony.

7. Defendant claims this fact is controverted but includes no factual support that Franklin's husband notified John Deere or Funk of a potential CRMC settlement or the actual CRMC settlement until after it occurred. The only notification alleged is Franklin's husband's claim that he notified Funk of the lawsuit in February 1992.

ERISA, 29 U.S.C. § 1002(1). The Plan is self-funded and does not purchase insurance to satisfy its obligation to plan participants. Under the terms of the plan, John Deere seeks summary judgment against defendant for the amount of medical benefits, $265,926.39, provided during Franklin's treatment and care following the medical procedure that resulted in her injuries.

Defendant does not contest that the plan agreement contains a subrogation clause which provides that the Plan is subrogated to all rights of recovery by an employee or the employee's dependent arising from a personal injury judgment or settlement. (Doc. 23 at ¶ 7; Doc. 25 at ¶ 1). Disagreement between the parties arises in enforcement of the provision. John Deere contends the subrogation provision in the plan agreement applies to this matter, and therefore, the Plan has a right of reimbursement from Franklin's estate. Defendant, however, asserts that the plan agreement subrogation provision is unenforceable. Defendant espouses four arguments in support of his assertion: 1) Neither Franklin nor her husband received a copy of the SPD; 2) the SPD cannot be understood by the average plan participant and fails to apprise the plan participant of his or her rights and obligations under the plan; 3) the SPD is contradictory to the plan agreement; and 4) John Deere's claim is barred by the statute of limitations.[8] (Doc. 25 at 2).

## A. *STANDARD OF REVIEW*

■ Resolution of John Deere's motion for summary judgment requires identification and interpretation of the portions of the welfare benefit plan relevant to the Plan's rights of subrogation and reimbursement. In addition to the plan agree-

ment in this matter, the SPD is also a document relevant to the determination of the terms of a welfare benefit plan. *See Chiles v. Ceridian Corp.*, 95 F.3d 1505, 1511 (10th Cir.1996); *see also* 29 U.S.C. § 1022(a). John Deere interprets the plan agreement and SPD as providing subrogation or a right of reimbursement from Franklin's estate for the benefits it paid on behalf of Franklin. Such interpretive decisions by ERISA plan administrators are generally subject to de novo review. *See Bruch*, 489 U.S. at 115, 109 S.Ct. at 956 (discussing the standard of review courts must apply when ERISA plan participants challenge an administrator's *denial of benefits* ).

Numerous courts also apply Bruch when plan administrators assert reimbursement and subrogation rights against plan participants. *See, e.g., Walker v. Wal–Mart Stores, Inc.*, 159 F.3d 938, 939 (5th Cir. 1998) (stating that *Bruch*'s principles are applicable to a plan's assertion of reimbursement and subrogation rights); *United McGill Corp. v. Stinnett,* 154 F.3d 168, 170–71 (4th Cir.1998) (applying the *Bruch* analysis to an administrator's interpretation of a reimbursement provision); *Cutting v. Jerome Foods, Inc.*, 993 F.2d 1293, 1295–96 (7th Cir.1993) (applying *Bruch*'s principles to an administrator's interpretation of a plan's subrogation provisions). *Bruch* provides that a court must review an administrator's decision under an arbitrary and capricious standard of review if the plan gives the administrator "discretionary authority to determine plan eligibility or to construe the terms of the plan." *Bartlett v. Martin Marietta Operations Support, Inc. Life Ins. Plan*, 38 F.3d 514, 517 (10th Cir.1994) (summarizing *Bruch's* holding). "Absent such discretionary au-

---

8. Defendant provides no legal or factual argument that John Deere's claim is barred by a statute of limitations. "A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point. [The court] will not do his research for him." *Pelfresne v. Village of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir.1990); *accord Capps v. Cowley*, 63 F.3d 982, 984 (10th Cir.1995) (citing *Pelfresne* ); *Robinson v. Tenantry (In re Robinson)*, 987 F.2d 665, 668 (10th Cir.1993); *Phillips v. Calhoun*, 956 F.2d 949, 953 (10th Cir.1992) (citing *Pelfresne* ). For this reason, the court will not address defendant's statute of limitations defense.

thority, the court reviews the plan administrator's decision *de novo.*" *Id.* (emphasis in original).

The Tenth Circuit has provided little guidance on the language necessary to confer discretion. It is clear, however, that in order to trigger the arbitrary and capricious standard, the plan "must impart discretionary authority in specific words, [however] no specific terminology (such as 'construe,' 'interpret,' 'deference,' or 'discretion') is required." *Caldwell v. Life Ins. Co. of North America,* 959 F.Supp. 1361, 1365 (D.Kan.1997) (quoting *Torre v. Federated Mut. Ins. Co.,* 854 F.Supp. 790, 813 (D.Kan.1994)) (internal quotations omitted). If specific words are found in the document that appear to permit the administrator to resolve disputes over eligibility or to construe disputed terms, then the administrator's exercise of discretion is entitled to deference. *See Gust v. Coleman Co., Inc.,* 740 F.Supp. 1544, 1550 (D.Kan.1990) *aff'd,* 936 F.2d 583 (10th Cir. 1991); *see also Caldwell,* 959 F.Supp. at 1365 ("If the entire document apparently empowers the administrator to resolve disputes concerning benefits, the court applies the deferential standard").

The parties have not suggested nor argued that a particular standard of review is applicable to John Deere's contention that the Plan is entitled to subrogation or reimbursement from Franklin's estate. Also, the parties have not identified any relevant language in the plan agreement or SPD to indicate whether discretion was conferred upon John Deere to interpret the Plan's terms.[9] Since neither party has addressed the issue, the court assumes for purposes of this motion that the de novo standard applies and therefore, affords John Deere's determination of the Plan's reimbursement or subrogation rights no deference. *See Kidd,* 88 F.3d at 851 (the court must view the record and reasonable inferences therefrom in the light most favorable to the nonmoving/opposing party).

## B. *CONSTRUING ERISA PLANS*

 When interpreting an ERISA plan, the plan documents must be viewed as a whole and, if unambiguous, construed as a matter of law. *See Chiles,* 95 F.3d at 1511. The documents' language must be given "its common and ordinary meaning as a reasonable person in the position of the [plan] participant, not the actual participant, would have understood the words to mean." *Id.* (quoting *Blair v. Metropolitan Life Ins. Co.,* 974 F.2d 1219, 1221 (10th Cir.1992)) (brackets in original). Summary judgment is only proper if the provision in question is unambiguous. *See Bower v. Bunker Hill Co.,* 725 F.2d 1221, 1223 (9th Cir.1984). However, "[w]hen conflicting extrinsic evidence must be evaluated in order to illuminate a plan's terms, summary judgment is not appropriate." *Chiles,* 95 F.3d at 1515 (citing *Bower,* 725 F.2d at 1225).

 A plan administrator is required to provide an SPD to each plan participant.[10] *See* 29 U.S.C. §§ 1021(a)(1), 1022(a) and 1024(b)(1). The SPD must be "written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a); *see also Semtner v. Group Health Serv. of Oklahoma, Inc.,* 129 F.3d 1390, 1393 (10th Cir.1997). "When the summary plan description and the plan [agreement] differ, the summary plan description is binding." *Semtner,* 129 F.3d at 1393. However, if the SPD is merely silent on a term or issue contained in the plan documents, the SPD does not prevail. *See Charter Canyon*

---

9. In fact, the entire plan agreement was not even provided to the court.

10. Likewise, pursuant to 29 U.S.C. § 1024(b)(2) and (4), the plan administrator must make available for inspection the various documents that establish the plan and furnish copies upon request of the plan participants or beneficiaries.

*Treatment Center v. Pool Co.,* 153 F.3d 1132, 1136 (10th Cir.1998).

### C. *JOHN DEERE'S RELIANCE ON THE PLAN AGREEMENT*

ERISA does not require a welfare benefit plan to contain a subrogation or reimbursement clause, nor does it prohibit or regulate the content of one that may be included in an ERISA plan. *See Member Servs. Life Ins. Co. v. American Nat'l Bank & Trust Co. of Sapulpa,* 130 F.3d 950, 958 (10th Cir.1997). Here, both the plan agreement and the SPD contain a provision dealing with the Plan's right of subrogation. John Deere, relying on the subrogation provision in the plan agreement, claims that the Plan is entitled to reimbursement from Franklin's estate.[11] Defendant does not disagree with John Deere's interpretation of the plan agreement: Rather, defendant argues that the Plan's right of subrogation and reimbursement must be determined exclusively under the SPD subrogation provision because the SPD provision is inconsistent with the plan agreement. Particularly, defendant claims that the SPD fails to accurately describe the Plan's right of reimbursement from plan participants and beneficiaries.[12]

Upon review of the subrogation provision in the SPD and in the plan agreement, the court concludes that the SPD language differs from that of the plan agreement. Both the plan agreement and SPD describe the Plan's rights with respect to a plan participant or beneficiary's claim against a third party tort-feasor. The plan agreement contains · detailed clauses outlining a plan participant's notification duties and other obligations. More importantly, it permits the Plan to file suit in the name of the injured plan participant or beneficiary and requires a *plan participant or beneficiary* to reimburse the Plan for benefits paid. In contrast, the SPD specifies only that the Plan "reserves the right to seek reimbursement *from the third-party* " if the Plan has paid expenses on behalf of the participant. (Doc. 23, Ex. B at 37) (emphasis added). There is no mention whatsoever of the Plan's right to seek reimbursement from the *plan participant or beneficiary.* Thus, the plan agreement *significantly* · expands the participant's obligations and the Plan's remedies against its participants and beneficiaries from those identified in the SPD.[13]

Furthermore, this is not a situation such as that in *Charter Canyon,* 153 F.3d at 1136–37, where the plan agreement is controlling because the SPD is silent on a matter. Both the SPD and plan agreement undertake to explain and identify the same issue or term, *i.e.,* the Plan's rights against third party tort-feasors who injure plan participants or beneficiaries. The

---

11. John Deere's memorandum in support of summary judgment contains a prophylactic assertion that Kansas statutes and regulations that prohibit insurers' subrogation rights for medical benefits paid to an insured are preempted by ERISA. (Doc. 23 at 6). *FMC Corp. v. Holliday,* 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990), supports the point asserted by John Deere. Defendant, however, does not argue that there is an applicable state statute or regulation that prohibits enforcement of any right of subrogation or reimbursement that the Plan may have against Franklin's estate. For this reason, any defense defendant may have based on a Kansas statute prohibiting subrogation is deemed abandoned.

12. John Deere cites three cases, *Cutting v. Jerome Foods, Inc.,* 993 F.2d 1293 (7th Cir.

1993), *Provident Life and Accident Ins. Co. v. Linthicum,* 930 F.2d 14 (8th Cir.1991), and *Singleton v. Board of Trustees of IBEW Local 613,* 830 F.Supp. 630 (N.D.Ga.1993), for the proposition that federal courts consistently hold plan participants obligated to reimburse ERISA plans when the plan's language contains a subrogation section. However, the decisions provide no guidance in a situation where the SPD is allegedly in conflict with the plan agreement or otherwise ambiguous and unclear.

13. Some SPDs give detailed descriptions of subrogation rights. *See, e.g., Germany v. Operating Engineers Trust Fund of Washington, D.C.,* 789 F.Supp. 1165, 1168 (D.D.C.1992) and *Springs Valley Bank & Trust Co. v. Carpenter,* 885 F.Supp. 1131, 1136–37 (S.D.Ind. 1993).

plan agreement sets forth numerous duties and affords multiple remedies to the Plan. The SPD on the other hand, avoids discussion of the participant's obligations and states only that the Plan may seek reimbursement from the tort-feasor. The purpose of enforcing the SPD if it differs from a plan agreement is to protect participants and beneficiaries from misleading or false information in the SPD. *Charter Canyon,* 153 F.3d at 1136. The policy is undoubtedly implicated here where the SPD's failure to identify the Plan's right of reimbursement against an actual participant can mislead participants as to the totality of the Plan's rights against them and their obligations under the plan agreement.

■ John Deere seeks to minimize the effect of the SPD by arguing that an SPD is not required to include all of the provisions of a plan, and here, the SPD generally informs participants of the Plan's subrogation rights. (Doc. 26 at 6). However, the standard is not whether the SPD generally informs participants and beneficiaries of a certain plan provision. Rather, the SPD must be "sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a). While it is true that neither 29 U.S.C. § 1022(b) nor C.F.R. §§ 2520.102–1 to 2520.102–5 require inclusion of subrogation rights in an SPD, once included in the SPD, they must not fail to inform or misinform plan participants and beneficiaries of their rights and obligations under the plan. *See, e.g., Waller v. Hormel Foods Corp.,* 120 F.3d 138, 140 (8th Cir.1997) (discussing whether an SPD subrogation provision is sufficiently accurate and comprehensive to inform participants and beneficiaries of subrogation rights and obligations under the plan); *Cagle v. Bruner,* 921 F.Supp. 726, 739 (M.D.Fla. 1995) (enforcing subrogation under the terms of the SPD where the plan language provided broader subrogation rights to the plan); *Thompson v. Federal Express Corp.,* 809 F.Supp. 950, 956–957 (M.D.Ga. 1992) (stating that the SPD controlled a

plan's subrogation rights where the SPD was in conflict with the plan's language).

■ Finally, in John Deere's reply, it relies on the SPD's general statement that "[t]his booklet describes the Plan in a general way and in summary form only, and is subject to the terms and conditions of the Plan document." (Doc. 23, Ex. B at 4). Based on this language, John Deere contends that any questions raised by the SPD could have been clarified by the plan agreement. However, there is nothing in the SPD subrogation provision alerting participants of the extensive obligations under the plan agreement nor of the fact that the Plan may seek reimbursement from participants. Additionally, giving effect to the SPD's general disclaimer would eviscerate the rule that SPDs be accurate and sufficiently comprehensive. *See Helwig v. Kelsey–Hayes Co.,* 93 F.3d 243, 248 (6th Cir.1996); *Pierce v. Security Trust Life Ins. Co.,* 979 F.2d 23, 27–28 (4th Cir. 1992); *Hansen v. Continental Ins. Co.,* 940 F.2d 971, 982 (5th Cir.1991); *McKnight v. Southern Life & Health Ins. Co.,* 758 F.2d 1566, 1570 (11th Cir.1985) Because the SPD subrogation provision differs from that of the plan agreement, the SPD controls the Plan's right of reimbursement from Franklin's estate.

D. *THE SPD IS UNAMBIGUOUS AND CONSTRUED AS A MATTER OF LAW*

John Deere's assertion of the Plan's right of reimbursement from Franklin's estate must be supported by the SPD's language because it is the controlling document. Reviewing the SPD subrogation provision, there is no ambiguity, and resort to extrinsic evidence is unnecessary. As such, the court construes the SPD as a matter of law. Giving the language its common and ordinary meaning, the court concludes that a reasonable plan participant would understand the SPD's subrogation provision to permit the Plan to seek reimbursement from third party tort-feasors only. Nothing suggests that the Plan

has a right to reimbursement from a plan participant or beneficiary in the event a participant or beneficiary receives a personal injury judgment or settlement.

### E. *ARGUMENTS RAISED IN JOHN DEERE'S REPLY*

In addition to those already addressed, John Deere includes three new arguments in its reply brief. Specifically, John Deere argues: 1) Franklin's estate or her husband is bound to reimburse the Plan because Franklin's husband signed a letter dated December 9, 1992; 2) the SPD does not control the Plan's reimbursement rights because neither Franklin nor her husband relied on or were prejudiced by the SPD's language; and 3) defendant must show John Deere acted in bad faith in providing an inadequate SPD. The court refuses to address these arguments because they were raised for the first time in a reply.[14]

D.Kan.Rule 7.1 governs motion practice in this court. The rule permits a dispositive motion, response and reply to be filed with the court. Generally, courts in this district prohibit new arguments and issues to be raised in a reply because the opposing party has not had an opportunity to address the issues. *See, e.g., Martin v. Kansas*, 996 F.Supp. 1282, 1296 (D.Kan. 1998) (refusing to address an issue raised in a reply); *Thurston v. Page*, 931 F.Supp. 765, 768 (D.Kan.1996) ("The court will not consider the new argument ... presented in defendant's reply brief when that issue was not raised in the initial motion for summary judgment"); *Mike v. Dymon, Inc.*, No. 95–2405–EEO, 1996 WL 427761, at *2 (D.Kan. July 25, 1996) ("In pursuit of

fairness and proper notice, the court generally summarily denies or excludes all arguments and issues first raised in reply briefs" (internal quotations and citations omitted)). Defendant has not had an opportunity to respond to the arguments nor controvert the factual issues raised in John Deere's reply. For this reason, the additional legal issues, and concomitantly the factual issues raised by the arguments, are excluded from consideration of John Deere's motion for summary judgment.[15]

## V. CONCLUSION

Under the terms of the plan agreement and SPD, John Deere has failed to show that the Plan is entitled to judgment as a matter of law for the amount of medical benefits paid on behalf of Patricia Franklin. For this reason, the motion for summary judgment (Doc.23) is denied.

A motion for reconsideration of this order is not encouraged. Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by this court in *Comeau v. Rupp*, 810 F.Supp. 1172, 1174 (1992). The response to any motion for reconsideration shall not exceed three pages. No reply shall be filed.

IT IS SO ORDERED.

---

14. In regard to the December 9, 1992 letter (Doc. 26, Ex. F), even if considered, the court fails to see its relevance. The letter's language specifies "the Company is subrogated to all right of recovery for any payment(s) made by a third party payor to the extend paid under this Plan." It also asks whether "you plan to seek settlement from an insurance company or *responsible third party*." (emphasis added). The letter does not address whether the Plan may seek recovery from the actual plan participant, nor does it

contradict or expand the SPD's subrogation provision.

15. Furthermore, the arguments raised by plaintiff in the reply are only cursorily briefed. The court would be doing both parties a disservice if it addressed the issues identified in the reply brief because the parties have not had an adequate opportunity to identify the relevant facts nor advance legal arguments buttressed by an explanation of relevant authority.