**Richard BAUMGARDNER;
et al., Plaintiffs,**

**v.**

**SMURFIT–STONE CONTAINER
CORPORATION, a Missouri
corporation, Defendant.**

**Civil No. 04–730–JO.**

United States District Court,
D. Oregon.

Dec. 2, 2004.

Thomas K. Doyle, Bennett Hartman Morris & Kaplan, LLP, Portland, OR, for Plaintiffs.

Andrew M. Altschul, Altschul Law Office, P.C., Joel A. Mullin, Stoel Rives, Portland, OR, for Defendant.

### OPINION AND ORDER

JONES, District Judge.

Plaintiffs Richard Baumgardner, Christine Devine, Gary Nathan, and Mike Mitchell bring this action against defendant Smurfit–Stone Container Corporation alleging four claims: 1) breach of collective bargaining agreements in violation of § 301 of the Labor Management Relations Act ("LMRA"); 2) breach of common law fiduciary duty; 3) violations of Oregon wage laws, ORS 652.120 *et seq;* and 4) equitable estoppel under the Employment Retirement Income Security Act ("ERISA").

This court has jurisdiction pursuant to the judicial review provision of the LMRA, 29 U.S.C. § 185, the judicial review provision of ERISA, 29 U.S.C. § 1132(e), as well as supplemental jurisdiction under 28 U.S.C. § 1367. Before the court is defendant's motion to dismiss (# 7) all claims with the exception of Baumgardner's and Devine's LMRA § 301 claims. In their response (#.15) to defendant's motion, plaintiffs request leave to amend their complaint. For the reasons discussed below, defendant's motion is GRANTED IN PART and DENIED IN PART, and plaintiffs' request for leave to amend is GRANTED.

### STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. A complaint will survive a Rule 12(b)(6) challenge un-less it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle the plaintiff to relief. *No. 84 Employer–Teamster Joint Council Pension Trust Fund v. Am. West Holding Corp.,* 320 F.3d 920, 931 (9th Cir.2003). In deciding a Rule 12(b)(6) motion, the court accepts all allegations of material fact as true and construes the allegations in the light most favorable to the nonmoving party. *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir.2001).

### FACTUAL BACKGROUND

The "facts" at this stage are taken from plaintiffs' complaint. The complaint establishes two groups of plaintiffs.[1] The first group, "plaintiff employees," are "early retirees"—former employees of defendant's Oregon City and Newberg mills who retired between 1989 and 2001 and were between ages 55 and 65 at the time of retirement. The second group, "plaintiff dependents," are current or former spouses of the early retirees. At all relevant times, plaintiff employees were covered by a series of collective bargaining agreements ("CBAs") between defendant and local chapters of the Association of Western Pulp and Paper Workers ("AWPPW").

According to plaintiffs, defendant executed a CBA in 1995 with AWPPW Local 60 ("1995 Agreement") and another CBA in 1997 with AWPPW Local 68 ("1997 Agreement"). In these agreements, defendant agreed to provide health and welfare benefits to employees and eligible dependents, and all plaintiffs became beneficiaries of the Smurfit–Stone Paper Health and Welfare Benefit Plan

---

**1.** While the complaint is styled as a class action complaint, classes have yet to be certified.

("Plan").[2] Each CBA described, among other things, covered services, levels of beneficiary coverage and co-payment responsibility, and distribution of premiums between defendant and Plan beneficiaries.

In the fall of 2003, defendant was informed by its third-party provider of services under the Plan that it would not renew in 2004 the Plan option in which plaintiffs were enrolled. On October 27, 2003, defendant informed plaintiffs by letter that their coverage would terminate at the end of the year, and plaintiffs would need to select new coverage. The letter offered plaintiffs two options for continued coverage, to be effective January 1, 2004. In response, in May 2004, plaintiffs brought this action alleging, among other things, that defendant's change in coverage constituted a breach of the CBAs. Plaintiffs seek an injunction to prevent defendant from changing their coverage under the Plan and damages for their out-of-pocket expenses.

## DISCUSSION

1. *Plaintiffs' LMRA § 301 Claim (First Claim for Relief)*

Defendant argues that the LMRA § 301 claims of plaintiffs Nathan and Mitchell fail because the 1995 Agreement provides no vested rights to benefits.[3] Central to this issue are the following provisions of the 1995 Agreement:

## GROUP COVERAGE FOR EARLY AND DISABILITY RETIREES

Effective January 1, 1989, early retirees between the ages of 55 and 65 ... and their eligible dependents as previously defined, *will be covered under the [Plan] until the retiree reaches age 65.*

If the spouse is younger than the retiree, coverage under the [Plan] will be provided for the spouse and eligible dependent children until the spouse reaches age 65. In the event of the retiree's death before the spouse reaches age 65, the Company will continue coverage under the [Plan] for the spouse and eligible dependent children until the spouse reaches age 65 or remarries whichever occurs first.

. . . . .

## GENERAL

It is hoped that this Plan will be continued indefinitely but, as is customary in group plans, *the Plan Administrator may terminate, suspend, withdraw, amend or modify the Plan in whole or in part at any time,* subject to the applicable provisions of the group insurance policy.

Affidavit of Andrew Altschul ("Altschul Aff."), Ex. 1 at 17–18 (emphasis added).

The 1997 Agreement, covering putative class representatives Baumgardner and Devine, contains nearly identical language conferring benefits, but lacks the reservation of rights provision. Altschul Aff., Ex. 2 at 10–11. Because of this difference between the two agreements, defendant has not moved to dismiss the LMRA § 301 claims of plaintiffs Baumgardner and Devine. Defendant does, however, seek dismissal of all other claims for all plaintiffs.

---

**2.** Plaintiffs allege that they became beneficiaries to the Plan under a CBA between defendant and AWPPW Local 166. Complaint at ¶ 4. There is no further mention of this agreement in the complaint or motion papers.

**3.** Plaintiffs do not specify which CBAs apply to which plaintiffs. Defendant suggests in its motion that the 1995 Agreement covered putative class representatives Nathan and Mitchell, and the 1997 Agreement covered putative class representatives Baumgardner and Devine.

Section 301 of the LMRA authorizes suits for violations of CBAs between an employer and a labor organization.[4] Vested benefits under a CBA "may not be altered without [plaintiffs'] consent." *Allied Chem. & Alkali Workers of Am. v. Pittsburgh Plate Glass Co.,* 404 U.S. 157, 181 n. 20, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971). At issue is whether plaintiffs' medical benefits constituted vested benefits under the terms of the 1995 Agreement. If the 1995 Agreement unambiguously reserved to defendant the right to modify health benefits, plaintiffs have no vested rights, and no § 301 claim will lie. *Bower v. Bunker Hill Co.,* 725 F.2d 1221, 1223 (9th Cir.1984). On the other hand, if there is any ambiguity as to the rights created by the 1995 Agreement, dismissal at this stage is improper. *See id.* at 1223–24. (summary judgment improper where CBA language was ambiguous).[5]

Further, if the language of the 1995 Agreement is ambiguous, the court may consult extrinsic evidence to help resolve the ambiguity. *Id.* When construing CBAs, the admissibility of extrinsic evidence is a substantive issue of federal common law, to be developed with reference to the policies of national labor law. *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 456–57, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957).[6] The Ninth Circuit has noted the prominent role of extrinsic evidence in courts' construction of CBAs:

> When the operation of an ordinary contract is not clear from its language, a court generally may consider extrinsic evidence to determine the intent of the parties in including that language. See generally, 3 Corbin on Contracts § 536, at 27–28 (1960). That principle is applied with even greater liberality in the case of a CBA. In ascertaining the intent of the parties to a CBA, "the trier of fact may look to the circumstances surrounding the contract's execution, including the preceding negotiations .... It may also consider the parties' conduct subsequent to contract formation ... and such conduct is to be given great weight."

*Ariz. Laborers, Teamsters & Cement Masons Local 395 Health & Welfare Trust Fund v. Conquer Cartage Co.,* 753 F.2d 1512, 1517–18 (9th Cir.1985) (emphasis omitted) (quoting *Laborers Health & Welfare Trust Fund v. Kaufman & Broad,* 707 F.2d 412, 418 (9th Cir.1983)).

Relying primarily on two cases, *Cinelli v. Sec. Pac. Corp.,* 61 F.3d 1437 (9th Cir. 1995), and *Turner v. Local Union No. 302, Int'l Bhd. of Teamsters, Chauffeurs, Ware-*

---

4. Section 301(a) of the LMRA, 29 U.S.C. § 185, provides:

 Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

5. Defendant furnished the court with excerpts of the 1995 and 1997 Agreements with its motion to dismiss. The court may consider matters outside the pleadings in a motion to dismiss without converting the motion into one for summary judgment, so long as the authenticity of the attached evidence is not contested and plaintiffs' complaint necessarily relies on that evidence. *Parrino v. FHP, Inc.,* 146 F.3d 699, 706 (9th Cir.1998). These conditions appear to be satisfied here.

6. It is not, as plaintiffs suggest, a matter of state contract law. Courts may take guidance from state law principles, however, to the extent they effectuate national labor policies. *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 457, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957).

*housemen & Helpers of Am.*, 604 F.2d 1219 (9th Cir.1979), defendant contends that the 1995 Agreement unambiguously precludes plaintiffs' benefits from vesting. I disagree, and find neither case particularly helpful. In *Cinelli*, the court held that an employer's life insurance benefits plan unambiguously reserved to the employer the right to discontinue plaintiff's insurance benefits. Defendant's reliance on *Cinelli*, however, is misplaced. The plan at issue in *Cinelli* not only contained a provision reserving the right for the employer to terminate benefits, but it also contained a "discontinuation provision," which provided that insurance of "any employee under this policy shall terminate upon discontinuance of the policy." *Cinelli*, 61 F.3d at 1444. Thus, the *Cinelli* plan explicitly conditioned life insurance benefits on the continued existence of the life insurance policy. *Id.* Defendant points to no comparable provision in the 1995 Agreement.

█ Moreover, the plan at issue in *Cinelli* was an ERISA plan, whereas plaintiffs' alleged entitlement to benefits arises out of a CBA.[7] It is well-settled that, "unless an employer contractually cedes its freedom, it is generally free under ERISA, for any reason at anytime, to adopt, modify, or terminate its welfare plan." *Inter–Modal Rail Employees Ass'n v. Atchison, Topeka & Santa Fe Ry. Co.*, 520 U.S. 510, 515, 117 S.Ct. 1513, 137 L.Ed.2d 763 (1997) (internal quotations and citations omitted) (contrasting the specific vesting requirements under ERISA). Other courts have observed a distinction between an entitlement to benefits under a CBA—resulting from a process of collective bargaining—and an entitlement to benefits under an ERISA plan—adopted by an employer solely at its discretion. *See Krishan v. McDonnell Douglas Corp.*, 873 F.Supp. 345, 351 (C.D.Cal.1994) (explicitly distinguishing the CBA and ERISA contexts with respect to the admission of extrinsic evidence). This distinction prevents *Cinelli* from controlling the analysis here.

The second case upon which defendant relies is *Turner v. Local Union No. 302, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of America*, 604 F.2d 1219 (9th Cir.1979). In *Turner*, the plaintiff-retiree alleged that his union's negotiations with his former employer to reduce his retirement benefits violated § 301 of the LMRA. The district court granted summary judgment for the union, which was affirmed on appeal. *Turner* is readily distinguishable. Its holding, that retirement benefits were clearly not vested, was made at the summary judgment stage after the court considered extrinsic evidence in the form of "the record of the successive collective bargaining agreements." *Turner*, 604 F.2d at 1225. Thus, *Turner* provides little guidance on the precise issue before this court, whether the 1995 Agreement, unambiguously and without reference to extrinsic evidence other than the 1995 Agreement itself, precludes vesting.

The precise language of the reservation of rights clause in the 1995 Agreement allows the "Plan Administrator [to] terminate, suspend, withdraw, amend or modify the Plan in whole or in part at any time . . . ." Altschul Aff., Ex. 1 at 18. Defendant argues that the quoted language gives it an unambiguous and unlimited ability to terminate or modify plaintiffs' benefits. Reading this language in conjunction with the provision granting early

---

7. That the Plan under which they received benefits was administered in accordance with ERISA requirements is a secondary consideration. More important is how plaintiffs became entitled to the benefits of the (ERISA-compliant) Plan, by the collective bargaining process.

retirement benefits (Altschul Aff., Ex. 1 at 17), however, it is plausible that it merely reserves to defendant some flexibility to adjust the means by which it fulfills its contractual obligation to provide plaintiffs certain benefits. The 1995 Agreement, read as a whole and attempting to give effect to all its provisions, does not unambiguously support defendant's position.

■ Thus, in view of the ambiguity of the 1995 Agreement, the early stage of the case, and the "liberality" with which this court is to employ extrinsic evidence in the collective bargaining context, *Arizona Laborers, supra,* 753 F.2d at 1517–18, defendant's proffered interpretation of the 1995 Agreement does not spring from its plain language so naturally as to warrant dismissal of the § 301 claims. Defendant has failed to meet its burden of showing that plaintiffs could prove no set of facts entitling them to relief, and therefore the motion to dismiss plaintiffs' § 301 claims is denied.

### 2. *Plaintiffs' State Law Claims (Second and Third Claims for Relief)*

Defendant next moves to dismiss plaintiffs' breach of fiduciary duty and state wage claims (Second and Third Claims for Relief) on the basis of LMRA § 301 preemption.

■ The Supremacy Clause of Article VI of the United States Constitution gives Congress the authority to preempt state law. *California v. ARC Am. Corp.,* 490 U.S. 93, 100, 109 S.Ct. 1661, 104 L.Ed.2d 86 (1989). Under § 301(a) of the LMRA, federal courts have jurisdiction over controversies involving CBAs and are authorized to fashion a body of federal law to enforce them. *See Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 403, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988) (citing *Textile Workers v. Lincoln Mills,* 353 U.S. 448, 451, 77 S.Ct. 912, 1 L.Ed.2d 972

(1957)). The Supreme Court has articulated the doctrine of complete preemption for § 301 of the LMRA. *Avco v. Aero Lodge 735,* 390 U.S. 557, 561, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968). Under principles of complete preemption, the LMRA preempts any state claim which, as applied in a particular case, "would frustrate the federal labor-contract scheme established in § 301." *Allis–Chalmers v. Lueck,* 471 U.S. 202, 209, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). Notably, § 301 preemption extends beyond state common law contract actions to any state law claim whose operative facts are "inextricably intertwined with consideration of the terms of the labor contract" *Id.* at 213, 105 S.Ct. 1904. "When resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a Section 301 claim ... or [be] dismissed as preempted by federal labor-contract law." *Id.* at 220, 105 S.Ct. 1904.

■ However, § 301 preemption is not a foregone conclusion every time a CBA might be relevant to a dispute. "[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Livadas v. Bradshaw,* 512 U.S. 107, 124, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994) (*citing Lingle,* 486 U.S. at 413, 108 S.Ct. 1877). The Ninth Circuit has further elaborated:

in the context of § 301 complete preemption, the term "interpret" is defined narrowly—it means something more than "consider," "refer to," or "apply." ... Although "the line between reference to and interpretation of an agreement may be somewhat hazy," the totali-

ty of the policies underlying § 301—promoting the arbitration of labor contract disputes, securing the uniform interpretation of labor contracts, and protecting the states' authority to enact minimum labor standards—guides our understanding of what constitutes "interpretation."

*Balcorta v. Twentieth Century–Fox Film Corp.*, 208 F.3d 1102, 1108–09 (9th Cir. 2000) (internal citations omitted). With these principles in mind, the court turns to defendant's preemption arguments.

### a. Claims for Breach of Fiduciary Duty

In their Second Claim for Relief, plaintiffs charge defendant with breach of common law fiduciary duty. Section 301 "preempts tort claims which, 'as applied, would frustrate the federal labor-contract scheme established in § 301.'" *Bale v. Gen. Tel. Co. of Cal.*, 795 F.2d 775, 779 (9th Cir.1986) (quoting *Allis–Chalmers*, 471 U.S. at 209, 105 S.Ct. 1904). A party cannot avoid the preemptive effect of § 301 by artfully pleading contract claims as tort claims. *Allis–Chalmers*, 471 U.S. at 211, 105 S.Ct. 1904. The proper inquiry in determining the scope of preemption is not how the complaint is cast, but "whether the claims can be resolved only by referring to the terms of the collective bargaining agreement." *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 999 (9th Cir.1987).

Plaintiffs' precise allegations are that defendant represented to them that "health and welfare benefits would continue as described in the Plan, including after January 1, 2004, and represented that plaintiffs' benefits would be the same as when they retired .... Defendant was acting in a fiduciary capacity when it made those representations." Complaint at ¶¶ 20–21. The complaint nowhere describes the source of the special relationship giving rise to the alleged fiduciary duty. In their response, however, plaintiffs argue that defendant's fiduciary duty arises from its administration of the early retirement plan. Plaintiffs' Response at 10. Under that theory, defendant's fiduciary duty arises under ERISA. *See* 29 U.S.C. § 1002(21)(A) (2000) (defining "fiduciary"). If so, plaintiffs' common law breach of fiduciary duty claims are preempted by ERISA (*see Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 66, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)), and precluded. *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985) (ERISA authorizes recovery for a breach of fiduciary duty only to the extent the breach has injured an ERISA plan, and only to the plan itself).

Alternatively, if plaintiffs' theory is that the fiduciary obligation arises under the 1995 or 1997 Agreements, their claims are preempted by § 301 of the LMRA. "A cause of action that requires a court to ascertain whether the CBA in fact placed 'an implied duty of care' ... and the 'nature and scope of that duty' involves the interpretation of the CBA and hence is preempted." *Audette v. Int'l Longshoremen's & Warehousemen's Union*, 195 F.3d 1107, 1113 (9th Cir.1999) (quoting *Int'l Bhd. of Elec. Workers v. Hechler*, 481 U.S. 851, 862, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987)).

Because plaintiffs point to no other source of fiduciary duty, and because neither defendant's administration of the Plan nor the CBAs between the parties can support a valid common law claim for breach of fiduciary duty, defendant's motion to dismiss plaintiffs' Second Claim for

Relief is granted.[8]

### b. State Wage Law Claims

■ In their Third Claim, Plaintiffs contend that defendant "violated ORS 652.120 *et seq* by failing to pay plaintiffs' wages in a timely manner." Complaint at ¶ 26. The "wages" to which plaintiffs refer are "salary, in the form of benefits." Complaint at ¶ 12(b). Defendant argues that these claims are preempted by § 301 of the LMRA. On the facts alleged, the court agrees.

■ Section 301 of the LMRA "cannot be read broadly to pre-empt non-negotiable rights conferred on individual employees as a matter of state law." *Livadas*, 512 U.S. at 123, 114 S.Ct. 2068 (citations omitted). Rather, "it is the legal character of a claim, as independent of rights under the collective-bargaining agreement" that determines whether the state law claim is preempted. *Id.* at 123–24, 114 S.Ct. 2068; *see also Paige v. Henry J. Kaiser Co.*, 826 F.2d 857, 864 (9th Cir.1987) (noting that Congress did not intend to preempt all local regulation of employment). State statutory rights can withstand the preemptive force of § 301 if they are "non-negotiable state law rights" which are "independent of any right established by contract." *Miller v. AT & T Network Sys.*, 850 F.2d 543, 546 (9th Cir. 1988) (finding handicap discrimination claims brought under Oregon statute not preempted because the statute created a

mandatory and independent state right); *Ramirez v. Fox Television Station Inc.*, 998 F.2d 743, 748 (9th Cir.1993) (claim of national origin discrimination in violation of California statute not preempted because the statutory right is independent of CBAs).

State statutory wage claims also have survived LMRA preemption. For example, in *Balcorta*, 208 F.3d 1102, *supra*, upon which plaintiffs rely, a California wage statute required the plaintiff's employer to pay him within 24 hours of discharge. *See* Cal. Lab.Code § 201.5 (1997). The court held that plaintiff's statutory wage claim was not preempted even though his CBA provided time periods for payment after discharge. *Balcorta*, 208 F.3d at 1112. The court reasoned that determining whether a statutory violation had occurred required reference only to the statute and a calendar, and did not require analysis of whether payment was timely according to the CBA. *Id.* at 1110–11. Thus, the state claim was not preempted.

■ In contrast, the validity of plaintiffs' state wage claim rests directly on interpretation of their rights under the 1995 and 1997 Agreements, rendering the wage claim identical to their § 301 claim. Thus, resolution of the wage claim is "inextricably intertwined" with analysis of the 1995 and 1997 Agreements, and is therefore preempted. *Allis–Chalmers*, 471 U.S. at 213, 105 S.Ct. 1904.[9]

---

8. Plaintiffs' alternative theory for breach of fiduciary duty (paragraph 23 of the complaint) merely restates their main theory (paragraphs 20–22 of the complaint). For the reasons discussed, it likewise fails to state a claim.

9. I note that the Oregon legislature has declared explicitly that employees' rights to timely compensation may be modified in a CBA: "This section does not apply to employ-

ment for which a collective bargaining agreement otherwise provides for the payment of wages upon termination of employment." ORS 652.140(5). A state's willingness for its statutory rights to be altered by private contract militates strongly in favor of LMRA § 301 preemption. *See Miller v. AT & T Network Sys.*, 850 F.2d 543, 548 (9th Cir.1988). This is a further distinction from *Balcorta v. Twentieth Century–Fox Film Corp.*, 208 F.3d 1102, 1111 (9th Cir.2000), in which the court

I therefore grant defendant's motion to dismiss plaintiffs' Third Claim for Relief.

### 3. *Plaintiffs' ERISA Estoppel Claim (Fourth Claim for Relief)*

 Plaintiffs also bring a claim for ERISA-based equitable estoppel. Defendant moves to dismiss this claim as improperly pleaded.

The Ninth Circuit has described the contours of "ERISA estoppel" claims as follows:

> An ERISA beneficiary may recover benefits under an equitable estoppel theory upon establishing a material misrepresentation, reasonable and detrimental reliance upon the representation and extraordinary circumstances. The Ninth Circuit has imposed two additional prerequisites on a plaintiff attempting to allege a claim of equitable estoppel in an ERISA action. First, the provisions of the plan at issue must be ambiguous such that reasonable persons could disagree as to their meaning or effect. Second, representations must be made to the employee involving an *oral* interpretation of the plan. Unless both conditions are met ... a beneficiary has no equitable estoppel claim.

*Pisciotta v. Teledyne Industries, Inc.*, 91 F.3d 1326, 1331 (9th Cir.1996) (internal citations omitted; emphasis added). Plaintiffs' complaint alleges only that defendant made written misrepresentations. *See* Complaint at ¶ 31. This is insufficient as a matter of Ninth Circuit law to state a claim for ERISA ·estoppel. *Pisciotta*, 91 F.3d at 1331. I therefore grant defendant's motion to dismiss this claim. I also grant plaintiffs' motion to amend their complaint to properly plead the elements of ERISA estoppel.[10]

### CONCLUSION

Defendant's motion to dismiss (# 7) is GRANTED IN PART and DENIED IN PART as follows:· Defendant's motion to dismiss plaintiffs' § 301 claims (First Claim) is DENIED. Defendant's motion to dismiss plaintiffs' state law claims (Second and Third Claims) is GRANTED. Defendant's motion to dismiss plaintiffs' ERISA estoppel claim (Fourth Claim) is granted, but plaintiffs may amend their complaint within 20 days of this opinion to plead the proper elements of the estoppel claim.

---

noted specifically that under § 219(a) of the California Labor Code, the statutory right could not be set aside by private agreement.

10. *Cf. Pisciotta v. Teledyne Industries, Inc.*, 91 F.3d 1326, 1331 (9th Cir.1996). The *Pisciotta* court held that refusing to allow the plaintiffs to amend their complaint was proper on grounds of futility because they could not allege ambiguity in the plan language at issue. Under the standards for ERISA estoppel claims set forth in *Pisciotta*, this lack of ambiguity itself was sufficient to defeat the ERISA estoppel claim. This is not the case here, as plaintiffs have alleged ambiguity in the language of the 1995 Agreement.